UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
                                        :

  UNITED STATES OF AMERICA         :

                                         :

            - v. -              :         17 Cr. 357 (LAK)

                                         :

  DAVID BLASZCZAK,            :
  THEODORE HUBER,            :
  ROBERT OLAN and             :
  CHRISTOPHER WORRALL,      :

                                           :

           Defendants.       :

                                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

**GOVERNMENT'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT DAVID BLASZCZAK'S MOTION FOR
EVIDENTIARY HEARING**

Robert Khuzami
Acting United States Attorney for the
Southern District of New York

Ian McGinley
Joshua A. Naftalis
Brooke E. Cucinella
Assistant United States Attorneys
    -Of Counsel-

## Table of Contents

I.    Background ..................................................................................................................2

    A.    The FBI Leaks in *United States v. William Walters*, 16 Cr. 338 (PKC)........................2

    B.    Defendant Huber's Request for Discovery and the Government's  Production of Information Regarding Chaves' Communications ........................................................3

    C.    The Pre-Indictment Articles Do Not Reflect Grand Jury Material  Relating to the Investigation in this Case ................................................................4

II.    Applicable Law ...........................................................................................................6

    A.    Rule 6(e).............................................................................................................6

    B.    Remedy ...............................................................................................................8

III.    Discussion ................................................................................................................11

    A.    Blaszczak Has Not—And Cannot—Establish A Prima Facie Showing  That A Grand Jury Leak Occurred in Connection With This  Investigation ......................................12

    B.    Even If There Was a Rule 6(e) Violation, Blaszczak Suffered No Resulting  Prejudice and His Request For A Hearing Must Be Denied.........................................14

IV.    Conclusion ...............................................................................................................17

## Table of Authorities

**Cases**

*Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988)...............................................passim

*Barry v. United States*, 865 F.2d 1317 (D.C. Cir. 1989) ................................................7, 8, 13

*In re Grand Jury Investigation (Lance)*, 610 F.2d 202 (5th Cir.1980)....................................8

*In re Grand Jury Subpoena*, 103 F.3d 234 (2d Cir.1996).........................................................7

*In re Sealed Case No. 99-3091*, 192 F.3d 995 (D.C. Cir. 1999)...............................................7

*In re United States*, 441 F.3d 44 (1st Cir. 2006)..........................................................8, 10, 16

*United States v. Broward*, 594 F.2d 345 (2d Cir. 1979) ........................................................10

*United States v. Carter*, 2005 WL 180914 (S.D.N.Y. Jan. 25, 2005)....................................17

*United States v. Eisen*, 974 F.2d 246 (2d Cir. 1992) ..........................................................9, 15

*United States v. Fattah*, 858 F.3d 801 (3rd Cir. 2017) ...........................................................16

*United States v. Friedman*, 854 F.2d 535 (2d. Cir. 1988)..................................................11, 15

*United States v. Goldsby*, 125 F. App'x 687 (6th Cir. 2005)..................................................17

*United States v. Hastings*, 461 U.S. 499 (1983) ......................................................................8

*United States v. Mechanik*, 475 U.S. 66 (1986)..................................................................9, 10

*United States v. Nordlicht et al.*, 16 Cr. 640 (E.D.N.Y. 2016) ..............................................11

*United States v. Rioux,* 97 F.3d 648 (2d Cir. 1996). ..........................................................8, 13

*United States v. Skelos*, 2015 WL 6159326 (S.D.N.Y. Oct. 20, 2015)..............................7, 13

*United States v. Sophie*, 900 F. 2d 1064 (7th Cir. 1990) .......................................................16

*United States v. William Walters*, 16 Cr. 338 (PKC) (S.D.N.Y. Mar. 1, 2017).......2, 10, 15, 17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
:
  UNITED STATES OF AMERICA                 :
                                           :
          - v. -                           :          17 Cr. 357 (LAK)
                                           :
  DAVID BLASZCZAK,                          :
  THEODORE HUBER,                           :
  ROBERT OLAN and                           :
  CHRISTOPHER WORRALL,                      :
                                           :
          Defendants.                      :
                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x


## GOVERNMENT'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT DAVID BLASZCZAK'S MOTION FOR
## EVIDENTIARY HEARING

The Government respectfully submits this memorandum of law in opposition to

defendant David Blaszczak's Motion for Evidentiary Hearing.[1]  In his motion, Blaszczak

argues that because an Federal Bureau of Investigation ("FBI") agent admitted leaking

information to the press about another, unrelated insider trading investigation, and because

there were two articles mentioning an investigation of Blaszczak published before he was

indicted, they have made a *prima facie* showing of a violation of Federal of Criminal

Procedure Rule 6(e) and should be granted an evidentiary hearing and a broad range of

discovery into other, unrelated grand jury investigations in this District.  (Def. Mem. at 1-3).

This position is supported neither by the law nor the facts of this case, where the content of

the articles do not address grand jury material and the discovery provided by the Government

to the defendants does not suggest timely communications consistent with a leak.  Because

the defendant has not made out a *prima facie* showing of a grand jury violation, and

---

[1]      Defendants Theodore Huber, Robert Olan and Christopher Worrall all join in
Blaszczak's motion.

because—even after being given the grand jury minutes—he cannot articulate any cognizable prejudice he suffered from an alleged violation, his request for an evidentiary hearing should be denied.

## I. Background

### A. The FBI Leaks in *United States v. William Walters*, 16 Cr. 338 (PKC)

In connection with *United States v. William Walters*, 16 Cr. 338 (PKC), an insider trading case in this District, the Government learned that an FBI supervisor, David Chaves, leaked information to the press about the Walters investigation before Walters was indicted. *See Walters*, No. 16 Cr. 338, slip op. at 5-7 (S.D.N.Y. Mar. 1, 2017) (hereafter the "*Walters* Opinion") (attached as Exhibit A). Chaves, who is no longer with the FBI, is now the subject of a criminal investigation by the Department of Justice's Public Integrity Section ("PIN"). *Id.* at 2. PIN's investigation began after the U.S. Attorney's Office (the "USAO") interviewed Chaves and he admitted to speaking with certain reporters in connection with the Walters case, conduct which was corroborated by Chaves' phone records during the relevant time period. *Id.* at 5-11. After two interviews, Chaves retained counsel and the USAO was informed that Chaves would invoke his Fifth Amendment right if asked additional questions. *Id.* at 11.

In that posture—in which Chaves had admitted to leaking information about the Walters investigation but the Government could no longer interview him (or the reporters) about the particular information that he provided—the Government asked the Court to assume that a violation of Rule 6(e) had occurred because the Government believed it could not rebut a *prima facie* case. *Id.* at 11-12. The Honorable P. Kevin Castel agreed. Judge Castel then proceeded directly to the remedial phase and gave the defendant an opportunity to articulate any prejudice he might have suffered as a result of the assumed grand jury violation. *Id.* at 12-17. Despite repeated efforts, Walters could not articulate any cognizable

2

prejudice from the leaks. *Id.* Accordingly, Judge Castel again denied the defendant's request

for a hearing, as well as Walters' motion to dismiss the Indictment or fashion ancillary relief.

*Id.* Consistent with the case law in this area, Judge Castel found that the proper remedy was a

criminal investigation of Chaves, rather than a windfall to a defendant who could not

establish prejudice to his criminal case. Judge Castel receives quarterly updates directly from

PIN on the status of its investigation. *Id.* at 2. In March of 2016, Walters was convicted of

insider trading following a four-week jury trial.

**B.      Defendant Huber's Request for Discovery and the Government's
Production of Information Regarding Chaves' Communications**

Although Chaves was not directly involved in the supervision of the criminal

investigation that led to the Indictment in this case (the "Blaszczak Investigation"), he held a

supervisory position at the FBI at the time of the Blaszczak Investigation through which he

technically oversaw all of the securities fraud squads in the FBI's New York Field Office.[2]

Accordingly, when counsel for Theodore Huber (who is also counsel for Walters) approached

the Government and asked for discovery reflecting any communications between Chaves and

the press in advance of two, pre-Indictment articles that appeared to address the Blaszczak

Investigation, the Government agreed to search its records. Specifically, the USAO agreed to

provide any information that PIN had gathered, through its investigation, of contacts Chaves

had with any of the authors in the run up to two identified articles: *Suspicious Trading:*

*Insider Probe Focuses on Medicare Agency,* which was written by Brody Mullins, Susan

Pulliam and Christopher Weaver and published in the *Wall Street Journal* ("WSJ") on

October 29, 2014 (the "October 2014 Article") (attached as Exhibit B); and *Ace Washington*

*Analyst Faces a Reckoning – David Blaszczak, Health Policy Tipster to Investors, is Focus of*

---

[2]      In contrast, Chaves had been the direct supervisor of the squad investigating the
suspicious trading in *Walters*.

*Federal Probe*, which was written by Brody Mulllins and Aruna Viswanatha, and published

by the WSJ on August 19, 2016 (the "August 2016 Article") (attached as Exhibit C).  The

Government also agreed to provide the defendants with the grand jury minutes leading to the

Indictment in this case, as it had in *Walters*, to demonstrate that no prejudice had flowed to

the defendant from the articles.  The Government reported to defense counsel on the results

of its search by letter dated January 15, 2018 (attached as Exhibit E to Defendant's motion).[3]

While the details set forth in the January 15th letter are subject to the protective order

in this case, the discovery does not reveal any communications that substantively related to

the Blaszczak Investigation.  *See* Exhibit E to the Def. Mem.  The records do reflect that

Chaves was in touch with Susan Pulliam (who was also the author of the articles at issue in

the Walters investigation) during the summer of 2014—a period of time that overlaps with

the Walters investigation—with records reflecting that his last communication with Pulliam

was a text message over three months before the October 2014 Article was published.  *Id.*

The records reflect no communications of any kind between Chaves and the authors of the

August 2016 Article for at least four months leading up to its publication.  *Id.*

### C. The Pre-Indictment Articles Do Not Reflect Grand Jury Material Relating to the Investigation in this Case

Of significant note, the articles referencing Blaszczak differ materially from the

articles at issue in *Walters*.  Simply put—and consistent with the apparent lack of contact in

the records between Chaves and the authors in the run up to the publication dates—neither

the October 2014 Article nor the August 2016 Article refers to grand jury material from the

Blaszczak Investigation.

---

[3]     While the Court has the information relayed by the Government in the form of a letter, if the Court believes a declaration from a competent witness swearing to this information is necessary the Government will supply one.

The October 2014 Article refers in its third paragraph to "three federal probes exploring whether employees of the Centers for Medicare and Medicaid Services . . . have leaked news that ended up in the hands of Wall Street traders, according to people with direct knowledge of the investigations." Exhibit B at 1. The article then references a "flurry of subpoenas" issued to policy-research firms, but does not detail whether those were grand jury subpoenas or subpoenas issued by the Securities and Exchange Commission (the "SEC") or other regulators. *Id.*

The next paragraph, however, brings clarity: "*The Securities and Exchange Commission* is pursuing three overlapping insider-trading investigations involving CMS, according to those people and documents reviewed by the Wall Street Journal. *One of the cases involves the Federal Bureau of Investigation.*" *Id.* (emphasis added.) The article goes on to describe the three probes in detail—the first involving Marwood, the second involving Blaszczak and the third involving Heights Securities LLC. *Id.* at 2. The article states that it is the *Heights Securities* investigation that involves the FBI. *Id.* ("SEC and FBI Officials in New York are also examining whether CMS officials disclosed information about an increase in funding for health insurance firms before it was made public in April 2013 . . . that probe is looking at the actions of a research firm called Heights Securities LLC and a prominent health-care lobbyist.") The October 2014 Article does not even suggest that the FBI was involved in the Blaszczak inquiry. Nor could it. At the time the article was published the FBI was not investigating Blaszczak. The SEC did not refer the Blaszczak matter to the USAO until the month after the October 2014 Article ran, and the FBI did not open its investigation until late January 2015. *See* the Declaration of Joshua Naftalis, at ¶¶4-6, Dkt. No. 114 (attached as Exhibit D). Thus, even if Chaves had been in touch with authors of the October 2014 Article, he could not have leaked grand jury information about the Blaszczak Investigation because there was none—the grand jury investigation had not yet begun.

5

The August 2016 Article likewise provides no cogent basis to suspect, let alone conclude, that the Article's reported information came from leaked grand jury material. Rather than referring to material protected by the secrecy rules of the grand jury, the August 2016 Article instead refers repeatedly to publicly-filed documents and the WSJ's own review in which it "interviewed scores of people about the business of gathering market-moving tips in Washington, including people with worked with Mr. Blaszczak as colleagues or competitors, and filed more than two dozen open-records requests with government agencies." Exhibit C at 2. The article details some of the results of the WSJ's "review," including that Blaszczak "spent roughly a decade working Government contacts for insights about coming policy changes that roiled health-care stocks and left his competitors flabbergasted." *Id.*

Notably, the article also states that "people familiar with the probe" said Blaszczak has "cooperated in the [G]overnment's probe and could face criminal charges." *Id.* Although the authors do not indicate that this information came from a law enforcement source, the substance of the statement itself belies any suggestion that it could be grand jury material relating to the criminal investigation—because it is wrong. Blaszczak was not then and is not now cooperating with the Government in connection with this case. While it is of course possible for a Government source to provide false information to a reporter—and such an act could violate agency policies or procedures and provide a basis for discipline or termination—that is not the same as providing facts gathered by the grand jury. Thus, the August 2016 Article also does not appear to contain information that would have been subject to grand jury secrecy protection.

## II. Applicable Law

### A. Rule 6(e)

Subject to exceptions not relevant here, Federal Rule of Criminal Procedure 6(e)(2) bars government lawyers and agents from disclosing any "matter occurring before the grand jury." Fed. R. Crim. P. 6(e)(2)(B)(iv). Courts have interpreted this language to prevent disclosures "that would reveal some secret aspect of the inner workings of the grand jury," such as evidence that is actually presented to the grand jury" or information that would "tend to reveal what transpired before the grand jury." *United States v. Skelos*, 2015 WL 6159326, at *9 (S.D.N.Y. Oct. 20, 2015) (quotation marks and alteration brackets omitted). The Rule does not, however, prohibit the discussion of evidence that is "obtained independently of the grand jury process" or investigative steps that do not involve the use of grand jury process. *Id.* at *10; *see also In re Grand Jury Subpoena*, 103 F.3d 234, 238 (2d Cir.1996); *In re Sealed Case No. 99-3091*, 192 F.3d 995, 1002 (D.C. Cir. 1999); *see also In re Sealed Case No. 99-3091*, 192 F.3d 995, 1001-02 (D.C. Cir. 1999) (stating that Rule 6(e) does not require that a "veil of secrecy be drawn over all matters occurring in the world that happen to be investigated by a grand jury" and holding that disclosure of prosecutors' belief that an indictment would be brought did not violate Rule 6(e) (citation omitted)).

In order to demonstrate that Rule 6(e) has been violated, a defendant must first make a *prima facie* showing that (1) there has been disclosure of a matter or matters occurring before the grand jury, and (2) the source of the disclosure was an attorney or agent of the government. *United States v. Skelos*, No. 15 Cr. 317 (KMW), 2015 WL 6159326, *9 (S.D.N.Y. Oct. 20, 2015) (holding that defendant did not make *prima facie* showing to warrant a hearing) (citing *Barry v. United States*, 865 F.2d 1317, 1321 (D.C. Cir. 1989)). If the defendant can meet both requirements, then the burden shifts to the Government to rebut the allegation of a violation of Rule 6(e). *Id*.

Courts typically focus on the information contained in the relevant media reports to determine whether the source was an attorney or agent for the Government, but it is not

necessary for a media report to expressly reference a Government official if the nature of the information provides an obvious connection. *Barry*, 865 F.2d at 1325 (citing *In re Grand Jury Investigation (Lance)*, 610 F.2d 202 at 218 (5th Cir.1980)). However, the burden is on the defendant to draw a connection between a law enforcement official and the disclosure of Rule 6(e) material. *Id.* at 1320 (noting that some articles "either do not explicitly mention 'law enforcement officials' in connection with information disclosed about the grand jury proceedings, or they mention law enforcement officials only in connection with 'investigations' underway that were not explicitly linked to the grand jury proceeding").

Finally, in assessing whether a defendant has made a prima facie case sufficient to warrant a hearing, the court must weigh any evidence presented by the Government to rebut allegations of a Rule 6(e) violation. *See United States v. Rioux,* 97 F.3d 648, 662 (2d Cir. 1996).

### B.    Remedy

District courts may exercise their supervisory authority to fashion remedies for violations of Rule 6(e)(2). Such remedies, however, must be both tethered to the alleged misconduct and sufficiently tailored to "focus on the culpable individual rather than granting a windfall to the unprejudiced defendant." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988); *see also United States v. Hastings*, 461 U.S. 499, 506 (1983) ("[D]eterrence is an inappropriate basis for reversal where . . . means more narrowly tailored to deter objectionable prosecutorial conduct are available."). Available remedies include holding the responsible individual or individuals in contempt of court, referring them to the bar or for criminal prosecution, or "chastis[ing] [them] in a published opinion." *Bank of Nova Scotia*, 487 U.S. at 263; *see also In re United States*, 441 F.3d 44, 60 (1st Cir. 2006) ("The advantage of contempt as a remedy for misconduct by government agents is that the remedy focuses, as it should, 'on the culpable individual rather than granting a windfall to the unprejudiced

8

defendant.' " (quoting *Bank of Nova Scotia*, 487 U.S. at 263)); *United States v. Hastings*, 461

U.S. at 506 n.5 (discussing remedies). A district court may only employ its supervisory

authority to dismiss an indictment if the defendant is prejudiced by the violation at issue.

*Bank of Nova Scotia*, 487 U.S. at 263 ("We conclude that the District Court had no authority

to dismiss the indictment on the basis of prosecutorial misconduct absent a finding that

petitioners were prejudiced by such misconduct."); *see also, e.g.*, *United States v. Eisen*, 974

F.2d 246, 261 (2d Cir. 1992) ("[A] defendant seeking reversal or a hearing regarding alleged

grand jury abuse must show prejudice or bias."); *In re United States*, 441 F.3d at 64

("Dismissal of the indictment is not appropriate when secrecy violations 'could not have

affected the [grand jury's] charging decision.' " (quoting *Bank of Nova Scotia*, 487 U.S. at

259-60)). Federal Rule of Criminal Procedure 52(a) specifically requires courts to "disregard[

]" any error that "does not affect substantial rights," and that Rule is "in every pertinent

respect[ ] as binding as any federal statute." *Bank of Nova Scotia*, 487 U.S. at 255. "Courts

have no more discretion to disregard [it] through the exercise of supervisory power than they

do to disregard constitutional or statutory provisions through the exercise of such power." *Id.*

Prejudice in the context of a Rule 6 violation focuses on whether the grand jury's

decision to return an indictment was compromised. *See United States v. Mechanik*, 475 U.S.

66, 76 (1986) (O'Connor, J., concurring) (because the error "is one affecting the grand jury

proceeding and is not in any sense a trial error[,]. . . the logical focus of the harmless error

inquiry is an examination of the influence of the error on the charging decision"). In light of

this focus, "dismissal of the indictment is appropriate only 'if it is established that the

violation substantially influenced the grand jury's decision to indict,' or if there is 'grave

doubt' that the decision to indict was free from the substantial influence of such violations."

*Bank of Nova Scotia*, 487 U.S.at 256 (quoting *United States v. Mechanik*, 475 U.S. at 78

(O'Connor, *J.*, concurring)). Although prejudice may be presumed where "the structural

protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair," such as if grand jurors were chosen in a discriminatory fashion, the Supreme Court has specifically held that Rule 6 violations do not fall within the "isolated exceptions" in which such a presumption might be appropriate. *Id.* at 256-57.

The prejudice inquiry is a rigorous one. *See, e.g., In re United States*, 441 F.3d at 60 ("the standard of prejudice is a high one"). In *Bank of Nova Scotia*, for example, the Supreme Court held that there was not even a "substantial question" as to whether the defendant was prejudiced despite a plethora of improprieties beyond just the unauthorized disclosure of grand jury information. *See id.* at 257-58, 263. And even where there is prejudice, the sanction of dismissing an indictment "is so drastic that . . . it must be reserved for the truly extreme cases." *United States v. Broward*, 594 F.2d 345, 351 (2d Cir. 1979); *see also United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001) ("The dismissal of an indictment is an 'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights."). Dismissing an indictment instead of focusing on the individual that leaked information grants a windfall to a guilty defendant at the expense of the public's interest in holding criminals accountable for their actions. *See Mechanik*, 475 U.S. at 72 (noting the "substantial social costs" to dismissal).

In *Walters*, Judge Castel rejected the defendant's motion to dismiss the indictment because the defendant failed to show prejudice resulting from the presumed grand jury leaks, finding that the appropriate remedy was the criminal investigation of Chaves. *Walters Opinion,* at 13 (finding no prejudice and specifically rejecting Walters' arguments that the leaks influenced a co-conspirator to cooperate with the Government, holding that "[the co-

conspirator's] conduct [was] not causally related to the government misconduct. Nor is it cognizable legal prejudice.").[4]

The Second Circuit has similarly held that an effort to induce cooperation through grand jury leaks does not warrant dismissal absent prejudice. In *United States v. Friedman*, 854 F.2d 535 (2d. Cir. 1988), the Second Circuit considered extensive publicity surrounding a grand jury investigation that the court characterized as "'outrageous.'" 854 F.2d at 582. In *Friedman*, the Second Circuit assumed *arguendo* "that the government persistently leaked information about grand jury proceedings to the press in an unethical and unlawful campaign both to induce the cooperation of potential witnesses and to supplant state prosecutorial efforts in a bureaucratic turf fight." *Id.* at 582. The Second Circuit nevertheless declined to dismiss the indictment because the appellants could not "show resultant prejudice from the publicity surrounding the grand jury proceedings." *Id.* at 584.[5]

## III. Discussion

Blaszczak requests a hearing "to determine whether an agent involved in the investigation of Mr. Blaszczak unlawfully leaked information from the grand jury to the press in order to advance the investigation in this case in violation of Rule 6(e) and, if so, the scope of the misconduct and the prejudice it caused, and for other appropriate relief to address any such violations of grand jury secrecy." (Def. Mem at 1.) In other words, unsatisfied with the

---

[4]     Chief Judge Irizarry in the Eastern District of New York also rejected a motion to dismiss an indictment or for discovery and an evidentiary hearing alleging a purported leak by Chaves in a white-collar case pending in that district, although no opinion has issued. *See United States v. Nordlicht et al.*, 16 Cr. 640 (E.D.N.Y. 2016) (October 16, 2017 docket entry stating that defense motion was "denied in its entirety" and indicating that a written opinion would follow).

[5]     The district court in *Friedman* fashioned a remedy short of dismissal to deal with any pre-trial publicity caused by the grand jury leaks—it transferred venue. Here, where the most recent article in question was published almost two years before the scheduled start of trial, any concern about publicity can be addressed through the l *voir dire* of potential jurors, as was done in *Walters*.

facts as they now stand, and unable to articulate any cognizable prejudice he or his co-defendants may have suffered, the defendant asks the Court to conduct a fishing expedition into the grand jury investigation in this case, and—based on his outstanding discovery requests—any other white collar investigation conducted by the FBI in recent years. This request is inconsistent with the law and should be denied.

A. **Blaszczak Has Not Established—And Cannot Establish—a *Prima Facie* Showing That a Grand Jury Leak Occurred in Connection With This Investigation**

In support of his request for a hearing, Blaszczak relies heavily on the fact that the Government conceded a Rule 6(e) violation in the *Walters* case, arguing, it seems, that if Chaves leaked in that case, he likely liked in this one, too. (Def. Mem. at 2.) Given the events at issue in *Walters*, the Government took the allegation seriously and produced discovery—including the grand jury minutes and evidence of Chaves' communications with reporters in the time period leading up to the articles touching on the investigations into Blaszczak—even without the defendants establishing a *prima facie* showing of a grand jury leak.

But even with the benefit of this discovery, Blaszczak can point only to the fact that Chaves was in contact with Susan Pulliam during the summer of 2014 to support his request for a hearing. *Id.* That is inadequate. First (and dispositive), there was no criminal investigation in existence during the summer of 2014. The criminal investigation into David Blascszack and his co-defendants in this case was not opened until November 2014—after the publication of the October 2014 Article. Blaszczak cannot establish a *prima facie* case of a leak of grand jury information at a time when no grand jury investigation existed. Indeed, the last communication between Chaves and Pulliam reflected in records obtained by the Government is in July of 2014—approximately *three months* before the October 2014 Article was published.

12

Blaszczak fares no better with the August 2016 Article. While the criminal investigation was of course ongoing in August 2016, the discovery requested by the defendants and provided by PIN reflects *no* communications between Chaves and the authors of the August 2016 Article or the WSJ trunk line in the four months leading up to its publication. It is therefore unsurprising that the August 2016 Article instead states that the WSJ had conducted numerous interviews of Blaszczak's contemporaries and colleagues in researching its story—not that reporters had spoken with law enforcement agents. In fact, there is no suggestion in the article that the authors had a law enforcement source. See *Barry*, 865 F.2d at 1320 (drawing distinction between "sources" and "Government sources"); *In re Grand Jury Investigation (Lance)*, 610 F.2d at 218 (noting that, absent any clear indication from the nature of the material, references to "sources close to the investigation" are insufficient to determine a link to the Government); *see also Rioux*, 97 F.3d at 662 (noting that "[m]ost of the media surrounding the Rioux investigation either: (1) failed to identify the source as one proscribed under Rule 6(e); or (2) discussed federal 'investigations,' without actually discussing matters before the grand jury.").

Significantly, the one statement that could potentially have been attributed to a law enforcement agent in the article (but was not) is the claim that Blaszczak was "cooperating with the Government probe"—a claim that is obviously and demonstrably false, as Blaszczak knows better than anyone (and acknowledges in his motion, *see* Def. Mem. at 4). Blaszczak was not cooperating at the time the August 2016 Article was published, has not cooperated, and is not cooperating now, as his indictment and the present motion well attest. A false statement like this cannot be the basis for finding a grand jury leak as a false statement cannot, logically, reveal any "secret aspect of the inner workings of the grand jury." *See Skelos*, 2015 WL 6159326, at *10 (finding that the details in news reports did not "clearly pertain to the secret aspect of the inner workings of the grand jury") (internal citations and

quotation marks omitted). Even if the Court were to credit the defendant's unsupported

allegations and assume that Chaves *intentionally* leaked false information about Blaszczak

cooperating with the Government's investigation (Def. Mem. at 4), that still would not

establish a Rule 6(e) violation because it does not involve the unauthorized disclosure of

grand jury material.

Here, unlike in *Walters*, the articles and the evidence gathered do not support the

likelihood of a Rule 6(e) violation. In *Walters*, the articles at issue discussed trading and

phone records that may have been gathered through the use of grand jury subpoenas; the fact

that subpoenas had been issued to certain entities; the investigation's use (or consideration) of

certain surveillance tactics, including the use of wiretaps; and the mental impressions (and

purported frustrations) of the investigators and prosecutors working on the probe—including

the difficulties in wiretapping one of the target's phones. Chaves had been in regular contact

with the authors of the Walters articles around the time of publication and ultimately admitted

to leaking.

Here, the articles and the evidence the defendants have requested and received point

in the opposite direction. One article was published before the criminal investigation began.

The other does not discuss the kind of documents reviewed by law enforcement or the mental

impressions of those involved in the probe. Moreover, the records gathered by PIN and

produced to the defense indicate that Chaves was not in contact with the authors in the run up

to the articles.

For these reasons, Blaszcak cannot make out a *prima facie* case of a Rule 6(e)

violation. Accordingly, the motion must be denied.

### B.  Even If There Were a Rule 6(e) Violation, Blaszczak Has Suffered No Resulting Prejudice and His Request For A Hearing Must Be Denied

Separate and apart from his failure to make out a *prima facie* case of any Rule 6(e)

violation, Blaszczak does not—and cannot—claim that he has suffered any actual prejudice

from an alleged grand jury violation, and thus his request for a hearing must be denied. *See Bank of Nova Scotia*, 487 U.S. at 254; *see also United States v. Eisen*, 974 F.2d 246, 261 (2d Cir. 1992) ("a defendant seeking reversal or a hearing regarding alleged grand jury abuse must show prejudice or bias"); *United States v. Friedman*, 854 F.2d 535, 583-84 (2d Cir. 1988) (not error to deny post-trial relief for alleged grand jury leaks without holding a hearing in the absence of showing of prejudice).

In his motion, Blaszczak claims the need for a hearing because "there is significant *possible* prejudice here." (Def. Mem. at 4.) (emphasis added). But he cannot articulate a cognizable form of prejudice—indeed, the only *possible* form of prejudice he identifies is that the false claims in the August 2016 Article about Blaszcak's cooperation (which are not even grand jury material, as discussed above) may have put pressure on other, unnamed witnesses to "falsely" implicate Blaszczak. Judge Castel swiftly and correctly rejected a similar argument in *Walters* as wholly speculative, *Walters* Opinion, at 13-14. While Blaszczak does not identify a particular witness supposedly tainted by the articles, it is worth noting that cooperating witness Jordan Fogel had already been approached by the FBI and begun proffering with the Government before the publication of the August 2016 Article.[6]

Moreover, even if the worst case scenario hypothesized by the defendants were true—that the Government had set about on a campaign of leaking grand jury information for the purpose of cultivating witnesses against the defendant—*Friedman* instructs that there is no basis for dismissal of the charges absent prejudice "no matter how pervasively rules concerning grand jury secrecy were violated." *Friedman,* 854 F.2d at 582. A criminal defendant must show that the deliberations of his own grand jury or trial jury were infected

---

[6] Fogel's cooperation post-dates the publication of the October 2014 Article—but then again, everything in the criminal investigation does because the investigation had not even been opened at that point.

by the leaks. *Id.* at 584. Here, as in *Walters*, the Government produced the grand jury minutes to the defendants so that they could make any argument available to them that the leak somehow infected the grand jury's decision to indict. Blaszczak has made no such argument, because the minutes show that the decision to indict was based on competent untainted evidence, of the type routinely gathered in insider trading cases.[7]

Indeed, rather than claiming actual prejudice and seeking a remedy appropriately tethered to that alleged misconduct, as the law requires, Blaszczak seeks a hearing to explore theories of hypothetical prejudice in what appears to be effort to gain an impermissible "windfall" of a remedy. *See In re United States*, 441 F. 3d at 60-61. Because there has been no prejudice here, and the appropriate remedy for Chaves' leaks—the investigation and potential prosecution of the wrongdoer—has already been granted, Blaszczak's request for a hearing must be denied. *See, e.g., United States v. Fattah*, 858 F.3d 801, 814 (3rd Cir. 2017) (finding that, where an agent admitted to leaking grand jury material during his testimony at trial, the "remedy lies, not in freeing the equally culpable defendant, but in prosecuting the police." (internal quotations and citations omitted)); *see also United States v. Sophie*, 900 F. 2d 1064, 1071 (7th Cir. 1990) ("A district court does not have to hold an evidentiary hearing on a motion just because a party asks for one.").

Because Blaszczak cannot show prejudice, and because the evidence requested by the defendants and provided by PIN demonstrates a pronounced absence of contacts between Chaves and the authors of the two articles in the run up to publication, Blaszczak shoots for the moon. In an argument relegated to a footnote, Blaszczak argues based on a single sentence of *dicta* from *Bank of Nova Scotia* that there may be a way forward without showing prejudice, if he can establish a systematic and pervasive pattern of misconduct. As such, the

---

[7]     The Government is also providing the grand jury minutes to the Court, attached as Exhibit E to this opposition and produced under seal.

defendants seek discovery into a plethora of unrelated insider trading investigations in this District. (Def. Mem at 3, 1). This too should be rejected, as it was rejected in *Walters*. *Walters Opinion*, at 16-18; *see also United States v. Carter*, 2005 WL 180914, at *4 (S.D.N.Y. Jan. 25, 2005) (nothing in *Bank of Nova Scotia* "obviates the requirement that a defendant show prejudice from misconduct, even if systematic and pervasive"); *see also United States v. Goldsby*, 125 F. App'x 687, 691 (6th Cir. 2005) (even allegations of "long-standing prosecutorial misconduct" must be accompanied by showing of prejudice to warrant dismissal). Unsurprisingly, no court has applied the dicta from *Bank of Nova Scotia* upon which Blaszczak relies to justify his request for overbroad discovery into white-collar investigations wholly unrelated to this case. The Court should deny this request.

## IV.     Conclusion

For the foregoing reasons, the Government respectfully submits that the Court should deny the defendant's motion in its entirety.

Dated:  New York, New York          Respectfully submitted,
        January 29, 2018

                                    Robert Khuzami
                                    Acting United States Attorney


                          By:       /S/_____
                                    Ian McGinley
                                    Joshua A. Naftalis
                                    Brooke E. Cucinella
                                    Assistant United States Attorneys
                                    Tel.: (212) 637-2257/2310/2477