# Kramer Levin

Barry H. Berke
Partner
**T** 212.715.7560
**F** 212.715.7660
bberke@kramerlevin.com

1177 Avenue of the Americas
New York, NY 10036
**T** 212.715.9100
**F** 212.715.8000

March 8, 2018

**BY ECF**

Hon. Lewis A. Kaplan
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, NY 10007

     Re:    United States v. Blaszczak et al., No. 17 Cr. 357 (LAK)

Dear Judge Kaplan:

     We write on behalf of Messrs. Huber and Olan[1] (the "Deerfield Defendants") to reply to the government's letter of March 5 and its Superseding Indictment, which has confirmed our fears about the government's intent. It is now clear that the government is using the artifice of a "Superseding Indictment" to seek to avoid complying with its prior commitments to the defendants and the Court, the deadlines ordered by the Court at the December 20, 2017 conference, and the requirements of the Federal Rules of Evidence, including Rules 404(b) and 403.[2]

     At the outset of this case, we sought particulars regarding certain details of the charges that the government was obligated to provide, and the government committed to those details, including after being ordered to do so by the Court. We of course have been busy preparing for trial based on those disclosures, and working hard to learn everything possible about the issues the government told us and the Court were the bases of the charges, including for each alleged improper disclosure all the details surrounding:

     (i) the relevant medical treatments to be reimbursed;

---

[1] Defendant Robert Olan, by his counsel David Esseks, Esq., joins in this reply.

[2] At the outset of the case, the government similarly and unsuccessfully sought to use the artifice of a "Superseding Indictment" to avoid the application of the Southern District's case assignment rules. *See* Order, *United States v. Blaszczak*, 17 Cr. 308 (DLC) (S.D.N.Y. June 8, 2017) (The Assignment Committee unanimously concluding that the Indictment was not a proper Superseding Indictment and directing it be filed as a new criminal action and randomly assigned), ECF No. 42.



(ii) the underlying medical issues being treated;

(iii) the reimbursement discussions involving CMS, Congress and the White House for that treatment;

(iv) the CMS rule-making process for that treatment for the particular rule-making cycle alleged to be at issue;

(v) the discussions by CMS personnel of that treatment reimbursement issue;

(vi) the purportedly confidential information allegedly obtained improperly by co-defendant David Blaszczak regarding the CMS reimbursement question;

(vii) the opinions, predictions and information disseminated by other political intelligence and health care analysts regarding the same issue;

(viii) the public information available at the time regarding that reimbursement debate and rule-making;

(ix) the bases for the cited trade(s), size and timing; and

(x) all the other communications by Deerfield related to (i)-(ix).

        With little more than a month remaining before trial, the government is now seeking to renege on every single commitment it previously made about its case on which the Deerfield Defendants have relied in preparing for trial, including performing the extremely labor-intensive work to address the ten issues described above for each allegedly improper disclosure. Specifically, the government is now seeking to renege on its prior commitments regarding the duration of the conspiracies, the alleged source of the information and other co-conspirators, the alleged "inside information" or improper disclosures, the purported illegal trades, and the alleged roles of Messrs. Huber and Olan.

### The Duration

        In October of last year, given the more than 10 million pages produced by the government, which included documents dating back to 2006, and the language of the Indictment that referenced the conspiracies lasting "[f]rom at least in or about 2012 through at least in or about 2014," we sought particulars from the government regarding the actual dates of the charged conspiracies arguing that it was obligated to commit to the actual dates of the charged conspiracies just as they agreed to do following motion practice in *United States v. Walters*, where it used the same ambiguous "at least" language last year. Tr. at 18-20, *United States v. Walters*, 16 Cr. 338 (PKC) (S.D.N.Y. Dec. 2, 2016), ECF No. 51. The government provided us with the requested disclosure in response to our request, confirming that the conspiracies ran from 2012 to 2014. *See* Exh. A to Joint Ltr., *United States v. Blaszczak,* No. 17 Cr. 357 (LAK)



(S.D.N.Y. Mar. 2, 2018), ECF No. 134.  Now, ten months after filing the original charges and one month before trial, the government remarkably seeks to double the length of the alleged conspiracy.  It has even resorted to using the same ambiguous "at least" language that prompted our request for particulars in the first place, alleging that the newly expanded conspiracies ran "from at least" in or about 2009.  More remarkable still, the government is making threats about seeking to prove up trading in 2007 and 2008 depending on "defense arguments at trial" (whatever that may mean).  Ltr. at 2 n.2, *United States v. Blaszczak*, No. 17 Cr. 357 (LAK) (S.D.N.Y. Mar. 5, 2018) ("Gov't Ltr."), ECF No. 135.

### The Claimed Source of the Information and Alleged Co-conspirators

In our motion for a bill of particulars, we noted that in the conspiracy counts the Indictment alleged that Christopher Worrall was the source of purportedly confidential information for Mr. Blaszczak, but that Count Three confusingly referred to information "received from [Mr. Worrall] and others" (Ind. ¶ 77), suggesting that Mr. Worrall may not have been Mr. Blaszczak's only source of information.  We asked the Court to require the government to disclose the identities of all the alleged co-conspirators, including Mr. Blaszczak's alleged sources of the charged inside information.  *See* Memorandum of Law in Support of Defendant Robert Olan's Pretrial Motions to Dismiss, For Production of *Brady* Materials, For a Bill of Particulars, and to Sever Certain Counts at 15-17, *United States v. Blaszczak*, 17 Cr. 357 (LAK) (S.D.N.Y. Oct. 27, 2017), ECF No. 80.  The Court ordered the government to identify any known co-conspirators.  Conference Tr. at 88, *United States v. Blaszczak*, 17 Cr. 357 (LAK) (S.D.N.Y. Dec. 20, 2017) ("[THE COURT:]  I am going to require the identification of alleged coconspirators to the extent the[y] are known by the government.").  When the government disclosed the alleged co-conspirators on January 22, it did not include any current or former employees of CMS, leaving Mr. Worrall as the only alleged CMS co-conspirator.  In the Superseding Indictment, however, the government has reversed course and now includes the new allegation that the Deerfield Defendants, along with others, "encouraged" Mr. Blaszczak "to use his friends and former colleagues at CMS, including [Mr. Worrall], to wrongfully obtain material non-public information about proposed cuts to reimbursement rates" (S1 Ind. ¶¶ 27, 45).  Having failed to identify any CMS employee other than Mr. Worrall as an alleged co-conspirator in its disclosures to the defense, the government cannot now flout the Court's directive by contending at this late date that there were other conspiring insiders at CMS who were knowingly and "wrongfully" providing Mr. Blaszczak with confidential information that he passed to the Deerfield Defendants.

### The Alleged Inside Information/Improper Disclosures
### and Purported Illegal Trades

The Indictment alleged illegal Deerfield trading in three stocks based on improper disclosures related to CMS's 2012 proposed regulations cutting the reimbursement rates for radiation oncology, and in three additional stocks based on purportedly improper disclosures relating to CMS's 2013 proposed and final kidney dialysis rules.  (Ind. ¶¶ 27b, 29, 31, 38, 54, 59, 64, 66).  Deerfield executes more than 10,000 trades each year, and given that Deerfield has been



working with Mr. Blaszczak since 2006 and the extraordinarily time-intensive efforts required to prepare to defend against each alleged instance of receiving and trading on improper inside information (as described above and in our earlier motion papers), it was imperative that the defense have clear advance notice of the trading and allegedly improper disclosures that would be at issue in this trial. Accordingly, we moved to require the government to disclose the trades it intended to prove up at trial as part of the charged conspiracies. The government did this on February 8, listing 27 trades in seven different stocks purportedly relating to the CMS rules identified in the Indictment. On February 26, however, as part of its purported Rule 404(b) disclosure, the government identified another 29 trades that it plans to introduce either under Rule 404(b) or "as direct proof" of the now expanded conspiracies charged in the Superseding Indictment, including trades purportedly relating to a newly identified 2009 CMS proposed rule. But the time for identifying any trading activity allegedly carried out in furtherance of the charged conspiracies has long passed and the government cannot simply rewrite its prior disclosures by filing a superseding indictment.

<u>The Alleged Role of Messrs. Huber and Olan</u>

The original Indictment suffered from another ambiguity that had to be cured through motion practice. The Indictment did not definitively allege whether the government contended Messrs. Huber and Olan participated in or had knowledge of the allegedly improper conduct relating to CMS's 2013 proposed and final kidney dialysis rules, which form the basis for certain substantive counts in which neither defendant was charged. As a result, Mr. Olan filed a motion to require the government to commit to whether the government intended to prove that he (or Mr. Huber, who joined the motion) participated in or was aware of the alleged improper conduct relating to the kidney dialysis rules. *See* Memorandum of Law in Support of Defendant Robert Olan's Pretrial Motions at 22-23, *Blaszczak*, 17 Cr. 357 (LAK) (S.D.N.Y. Oct. 27, 2017), ECF No. 80. At the December 20th hearing, the government committed to providing Messrs. Olan and Huber with notice 60 days before trial if it intended to offer any proof about their knowledge of the 2013 kidney dialysis trades and allegations. *See* Conference Tr. at 88:15-89:1, *United States v. Blaszczak*, 17 Cr. 357 (LAK) (S.D.N.Y. Dec. 20, 2017). Consistent with its commitment to the Court, the government confirmed that it was not making any such allegations against the Deerfield Defendants by not providing either defendant with notice by the required date, which is now long passed. Nevertheless, ignoring its commitment to the Court and the Deerfield Defendants and its non-disclosure, the government filed a Superseding Indictment that alleges in the introductory section leading up to the discussion of the 2013 kidney dialysis rules that "beginning at least as early as June 2009," Messrs. Huber and Olan, among others, "encouraged" Mr. Blaszczak to use his friends and former colleagues at CMS "to wrongfully obtain material non-public information," about proposals to revise CMS's reimbursement rates for kidney dialysis. (S1 Ind. ¶ 45). Once again, the government should not be allowed to violate its commitments and reverse its position at this late date by offering up evidence of this new allegation to support the contention that Messrs. Huber and Olan participated in or were aware of the purportedly unlawful conduct relating to the CMS kidney dialysis rules.



* * * * *

The excuses offered by the government in an attempt to justify its actions are specious and only seem to confirm that it is acting in bad faith. First, its suggestion that the defendants were on notice it would seek to multiply the allegations against them because it earlier mentioned that it would have to correct its error in naming the wrong company in Counts 17 and 18, counts which do not even name the Deerfield Defendants, does not even pass the laugh test, a time worn and reliable standard that rarely needs to be invoked in legal filings. *See* Gov't Ltr. at 1 ("First, with respect to the S1 Indictment, the Government first notified the defendants that it would be seeking a superseding indictment on October 26, 2017, when it informed them that there was an error in the Indictment with respect to Counts 17 and 18.").

Second, the government's attempt to shift blame to Investment Advisor-A also lacks credibility. The government has had documents from Investment Advisor A for the 2009-2011 period, including documents that bear on the very issues the government now seeks to interject into this case, since at least September 2017. And the government had more than a month to review the additional documents it received in November prior to the December 20th hearing on our motions. Even more egregious, the government's attempted reliance on the fact that it received Investment Advisor-A's trading blotters for the years 2009, 2010 and 2011 in February 2018 fails to mention the critical fact that the government obviously made the decision to request those documents only shortly before they were produced.

Third, the government's claim that it filed the Superseding Indictment to somehow "avoid juror confusion" (Gov't Ltr. at 2) makes no sense; adding three years and new CMS proposed rules, allegedly improper disclosures and trading activity to the conspiracy would seem to have the opposite effect.

Indeed, the government's admission that it decided to recast the originally charged three-year conspiracy into a six-year conspiracy only as it was "preparing to make its disclosures relating to Rule 404(b)," (*id.*. at 2), is revealing of the true motivation for its actions. By seeking to expand the time period of the conspiracies to include acts that would not otherwise be admissible as acts in furtherance of the conspiracies originally charged, the government is trying to afford itself the ability to introduce documentary and testimonial evidence of cherry-picked vignettes from the earlier time period without having to satisfy the requirements of Rules 404(b) and 403, a point that is underscored by the government's related admission that it plans to "offer communications between and among the co-conspirators spanning the entire length of the [newly expanded] conspiracy." (*Id.* at 1 n.1). That the government intends to use the Superseding Indictment as a Trojan horse for otherwise inadmissible Rule 404(b) evidence, as well as arguments and evidence it failed to disclose within the required time, is also supported by the implausibility of its claim that it only recently occurred to them that the conspiracies allegedly began three years earlier despite the fact that it has been working for more than 18 months with the alleged Deerfield co-conspirator, Jordan Fogel, who worked alongside Messrs. Huber and Olan as a member of the Devices Group at Deerfield and interacted with Mr. Blaszczak since well before 2009.



       For all of these reasons, we respectfully request that the Court (i) preclude the government from introducing any trading beyond that disclosed in its February 8, 2018 letter as proof of the charged conspiracies; (ii) schedule briefing on the question of whether the trading and other allegations disclosed in the government's February 26 letter should be admitted under Rule 404(b), Rule 403 or otherwise; (iii) preclude the government from offering evidence of any trading or other purportedly improper disclosures of government information beyond those set forth in its February 8 and February 26 letters; and (iv) preclude the government from offering any evidence or arguments that are inconsistent with its prior disclosures relating to Messrs. Huber and Olan's knowledge of the purportedly unlawful activity relating to the CMS kidney dialysis rules, or the identities of the unindicted co-conspirators.

       Respectfully submitted,

      /s/
      Barry H. Berke
      Dani R. James
      Kramer Levin Naftalis & Frankel LLP
      *Attorneys for Theodore Huber*

CC: All counsel of record (by ECF and e-mail)