UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,

-against-

S1 17-cr-357 (LAK)

DAVID BLASZCZAK, et al.,

Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

Appearances:

A. Damian Williams
Brooke Elizabeth Cucinella
Ian Patrick McGinley
Joshua Arditi Naftalis
Assistant United States Attorneys
ROBERT KHUZAMI
ACTING UNITED STATES ATTORNEY

Clay Hubbard Kaminsky
David E. Patton
Sabrina P. Shroff
FEDERAL DEFENDERS OF NEW YORK INC. (NYC)
*Attorneys for Defendant David Blaszczak*

Barry H. Berke
Dani R. James
Nolan James Robinson
KRAMER, LEVIN, NAFTALIS & FRANKEL, LLP
*Attorneys for Defendant Theodore Huber*

David C. Esseks
Eugene Edward Ingoglia
Tobias Jacob Fischer
ALLEN & OVERY LLP
*Attorneys for Defendant Robert Olan*

Stephen Robert Fishbein
John A. Nathanson
SHEARMAN & STERLING LLP (NY)
*Attorneys for Defendant Christopher Worrall*

LEWIS A. KAPLAN, *District Judge.*

This matter is before the Court on motions by defendant David Blaszczak for discovery, an evidentiary hearing, and dismissal of the indictment based on suspicion that one or more FBI agents or other government personnel leaked grand jury material to the press in violation of Rule 6(e) of the Federal Rules of Criminal Procedure. The motions are denied.

## *Background*

*The* Walters *Leak*

At least one of the antecedents of this motion was a prior disclosure to the press of government information concerning a different case.

In 2014 and 2015, the government was conducting an investigation that eventually culminated in the unsealing, on May 19, 2016, of an indictment charging Walters and another individual with wire and securities fraud (the "*Walters* Investigation").[1]

Beginning in or about late May 2014, *The New York Times* and the *Wall Street Journal* published articles about the "subjects of the [*Walters* I]nvestigation, particular stock trades and tipping chains, potential illegal trading profits, and the use of particular investigative techniques."[2] Motion practice following the *Walters* indictment led to an admission by FBI Supervisory Special Agent David Chaves, who oversaw the FBI's New York white-collar crime

1. *United States v. Walters*, No. 16 cr. 338 (PKC) [DI 104], at 5-9 (S.D.N.Y. Mar. 1, 2017).

2. *Id.* at 12.

unit,[3] "to being a significant source of confidential information leaked to reporters"[4] and a concession by the government, based on details in the articles that suggested the source of the leak was "someone with access to the trading and phone records gathered by grand jury subpoena," that information in the articles about the *Walters* Investigation "may have come from grand jury subpoenas."[5]

Chaves now is under investigation by the Department of Justice's Public Integrity Section. In the *Walters* case, Judge Castel, after being asked by the government to assume a violation of Rule 6(e), found at the remedial stage that the defendant had failed to show prejudice and so denied the requested relief.[6]

*This Case*

The present motion rests on two *Wall Street Journal* articles that Blaszczak argues are evidence of a violation of grand jury secrecy in this case.[7] And they must be put in proper context fully to appreciate Blaszczak's arguments and the government's response.

---

3 DI 118, at 2.

This case was investigated by that same unit, although not as part of the *Walters* Investigation.

4 *Walters*, No. 16 cr. 338 (PKC) [DI 104], at 10.

5 *Id.*

6 *Id.* at 10, 13.

7 DI 125, Exhs. B, C.

*The Investigations Leading to This Case*

Two investigations preceded this case.

The first was begun by the Securities and Exchange Commission (the "SEC") in July 2013 as an informal inquiry that evolved into a formal investigation in November 2013.[8] During the course of that investigation, the SEC issued about 56 subpoenas and regulatory demands for documents.[9] In November 2014 the SEC referred the case to the United States Attorney's Office ("USAO") for criminal investigation.[10] The FBI then opened a criminal investigation in January 2015.[11]

Once the Commission made the criminal referral, two parallel investigations went forward, one by the SEC and the other by the USAO and the FBI. The extent of the interaction among these agencies will be the subject of another ruling. It suffices for present purposes to note that the SEC and USAO conducted 39 joint interviews of 19 people.[12] In addition, the USAO, in conjunction with the FBI or the Department of Health and Human Services, conducted thirteen interviews independent of the SEC, and the FBI spoke with people on eight occasions independent

---

8 DI 114, ¶ 4.

9 *Id.*

10 *Id.*

11 *Id.* at ¶ 6.

12 *Id.* at ¶ 7.

of the USAO.[13]

In due course, the USAO presented the matter to a grand jury in May 2017. Defendants were indicted on May 23, 2017.[14]

*The Articles*

During the course of these investigations, the *Wall Street Journal* published two articles mentioning Blaszczak. The first was published on October 29, 2014 (the "2014 Article") and the second on August 19, 2016 (the "2016 Article").[15] Both contained information about the federal investigations, and they attributed some of that information to sources they referred to as "people familiar with the probe."[16]

The 2014 Article discussed a "flurry of subpoenas" issued by the SEC as part of "three overlapping insider-trading investigations involving [the Centers for Medicare and Medicaid Services]."[17] One of those three investigations, according to the article, was "focused on . . . Blaszczak" who, per the article, was "long regarded as one of Washington's most prominent policy analysts," and who "has made many accurate predictions about Medicare payments for medical

---

13. *Id.* at ¶ 8.

14. DI 10.

The government filed a superseding indictment on March 5, 2018. DI 137.

15. DI 125, Exhs. B, C.

16. DI 114, ¶ 4.

17. DI 125, Exh. B. at 1.

products."[18]

The 2016 Article focused on Blaszczak's career, the investigations of his conduct, and his potential civil and criminal liability.[19] The article did not say that any of the information it revealed was provided by a government agent or attorney, but thrice it attributed information to "people familiar with the probe." First, it said that:

> "The documents made public in June by the Justice Department and Securities and Exchange Commission[, which it described in its opening paragraph as 'public documents.'] are part of criminal and civil insider-trading cases against the former Visium manager. They refer to a 'co-conspirator' and 'political consultant,' without naming the person, for allegedly relaying the market-moving information to the Visium manager from sources inside CMS. *People familiar with the probe said the references are to Mr. Blaszczak*."[20]
>
> The next statement attributed to "people familiar with the probe" was that:
>
> "Mr. Blaszczak's alleged tip to the Visium manager is one spoke of a *broad federal investigation of Mr. Blaszczak himself* . . ."[21]
>
> Finally, the 2016 Article said:
>
> "The [*Wall Street Journal*'s] review [of Blaszczak's career] shows how Mr. Blaszczak spent roughly a decade working government contacts for insights about coming policy changes that roiled health-care stocks and left his competitors flabbergasted. *He has cooperated in the government's probe and could face criminal charges, said people familiar with the probe*."[22]

---

18 *Id.* at 2.

19 DI 125, Exh. C.

20 DI 125, Exh. C at 1-2 (emphasis added).

21 *Id.* at 2 (emphasis added).

22 *Id.* (emphasis added).

*The Present Motions*

On the basis of these articles and the *Walters* leak, Blaszczak first moved for discovery or dismissal of the indictment.[23] At oral argument, the Court ordered that the government produce to the defendant the grand jury minutes in addition to the material that the government already produced voluntarily, a ruling that turned out to moot so much of Blaszczak's motions as sought discovery.[24] Following receipt of that material, the defendant then moved for a hearing to determine whether the was a violation of Rule 6(e).[25]

*Discussion*

Rule 6(e) of the Federal Rules of Criminal Procedure protects the secrecy of "a matter occurring before the grand jury." It provides, in relevant part, that:

---

23 DI 73.

24 Blaszczak initially sought production of "(1) any and all information in the possession of the U.S. Attorney's Office, the FBI's Public Integrity Section, or the Justice Department's Office of the Inspector General concerning suspected improper disclosures by SSA Chaves or others related to the investigation of Mr. Blaszczak or any alleged coconspirator; (2) the grand jury minutes in this case, and (3) any other information relevant to SSA Chaves' leaks of information related to this case or other white collar investigations." DI 73, at 9. The government agreed to furnish some but not all of these materials. DI 94, at 68-69. At oral argument, the Court directed the government, by January 15, 2018, to produce the material it had agreed to turn over. Tr., Dec. 20, 2017 [DI 111, at 51:9-20]. And it then directed the defendants, following its review of the government's production, to submit a letter by January 22, 2018 detailing any respects in which the government's production was not sufficient for its purposes. *Id.* at 51:22-52.1. The defendants submitted no such letter and have not otherwise claimed that the discovery provided by the government has been insufficient for purposes of litigation their Rule 6(e) claim. The discovery aspect of Blaszczak's motion therefore is moot.

25 DI 117.

> "Unless these rules provide otherwise, the following persons must not disclose a matter occurring before the grand jury: (i) a grand juror; (ii) an interpreter; (iii) a court reporter; (iv) an operator of a recording device; (v) a person who transcribes recorded testimony; (vi) an attorney for the government; or (vii) a person to whom disclosure is made under Rule 6(e)(3)(A)(ii) or (iii)."

"Before a court will order a hearing on a possible breach of the Grand Jury Secrecy Rule, the defendant must establish a prima facie case of a violation of Federal Rule of Criminal Procedure 6(e)."[26] In determining whether the defendant has made out a *prima facie* case:

> "the court should examine, among other factors: (1) whether the media reports disclose matters occurring before the grand jury; (2) whether the media report discloses the source as one prohibited under Rule 6(e); and (3) evidence presented by the government to rebut allegations of a violation of Rule 6(e)."[27]

In addition, even if there has been a Rule 6(e) violation, relief may be granted only if the defendant shows prejudice as a result of the violation.[28]

*Has Blaszczak Made Out a* Prima Facie *Case*?

*The 2014 Article*

As an initial matter, there obviously is no *prima facie* case that information in the 2014 Article was disclosed in violation of Rule 6(e). The simple reason is that the article pre-dated the criminal referral, the USAO's investigation, and the presentation of the matter to the grand jury. As grand jury secrecy is breached only by disclosure of information that actually is presented to or

---

26 *United States v. Rioux*, 97 F.3d 648, 662 (2d Cir. 1996)

27 *Id.*

28 *See, e.g.*, *Walters*, No. 16 cr. 338 (PKC) [DI 104], at 12-20.

that "may tend to reveal what transpired before" the grand jury,[29] the 2014 Article could not have disclosed a "matter occurring before the grand jury." Blaszczak therefore is left with the 2016 Article and whatever support, if any, he may draw from the *Walters* situation.

*Did the 2016 Article Disclose Any "Matter Occurring Before the Grand Jury"?*

In order to make out a *prima facie* case of a violation, the defendant first must show that the publication in question contained information that Rule 6(e) protects.[30] Rule 6(e) protects from disclosure only "a matter occurring before the grand jury." We therefore start by considering whether the 2016 Article contained any such matter.

The "core" of the information that Rule 6(e) protects is evidence that actually is presented to a grand jury. "Protection also extends beyond the literal evidence that is presented to include 'anything that may tend to reveal what transpired before [the grand jury], such as summaries of grand jury testimony.'"[31] But Rule 6(e) does not apply to disclosures of information "obtained

---

29

*United States v. Skelos,* No. 15-cr-317 (KMW), 2015 WL 6159326, at *9 (S.D.N.Y. Oct. 20, 2015) (quoting *United States v. Eastern Air Lines*, 923 F.2d 241, 244 (2d Cir. 1991)).

30

Of course, it is the disclosure of a matter occurring before a grand jury by a government agent that violates Rule 6(e), regardless of whether the information is published. But here the defendant's sole piece of direct evidence of a violation is the article itself, and so in this case if the article contains no information of the sort Rule 6(e) protects, then no *prima facie* case can be made out.

31

*United States v. Skelos,* No. 15-cr-317 (KMW), 2015 WL 6159326, at *9 (S.D.N.Y. Oct. 20, 2015) (quoting *United States v. Eastern Air Lines*, 923 F.2d 241, 244 (2d Cir. 1991)).

Some courts, although not the Second Circuit, have construed "matters occurring before the grand jury" to include information that may reveal what is likely to occur in front of the grand jury in the future (such as "the identities of witnesses or jurors, the substance of testimony as well as actual transcripts, the strategy or direction of the investigation, the

independently of the grand jury process, even if the same information might later be presented to the grand jury."[32] Nor does it apply to "information . . . produced by a criminal investigation that parallels but is independent of a grand jury investigation . . . because [that] is not a matter occurring before the grand jury."[33] And the same is true, by parity of reasoning, of information independently produced by an SEC or other investigation.

Here, the 2016 Article attributed to "people familiar with the probe" statements that (1) mentions in previously public documents of a "co-conspirator" and "political consultant" referred to Blaszczak, (2) "Blaszczak's alleged tip to . . . Visium" was a subject of a "broad federal investigation," and (3) Blaszczak was cooperating with the government and could face criminal charges. Blaszczak argues that these statements disclosed "matters occurring before the grand jury." But that argument is not persuasive.

As an initial matter, none of these statements, at least on its face, describes anything that occurred before a grand jury. The first gives the opinion of some unspecified source as to who was meant by references in public documents to a "co-conspirator" and "political consultant;" it does not say that a grand jury witness had testified that the references were to Blaszczak or anything

---

deliberations or questions of jurors, and the like"). *E.g., In re Sealed Case. No. 99-3091*, 192 F.3d 995, 1001 (D.C. Cir. 1999) (quoting *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 500 (D.C. Cir. 1998)); *see also In re Grand Jury Investigation*, 610 F.2d 202, 216-17 (5th Cir. 1980) ("We construe the secrecy provisions of Rule 6(e) to apply not only to disclosures of events which have already occurred before the grand jury, such as a witness's testimony, but also to disclosures of matters which will occur, such as statements which reveal the identity of persons who will be called to testify or which report when the grand jury will return an indictment."). In this case, nothing turns on whether the term properly is construed so broadly.

32 *Skelos*, 2015 WL 6159326, at *10.

33 *In re Grand Jury Subpoena,* 103 F.3d 234, 238 (2d Cir. 1996).

approaching that. The second statement does not say that the reference to a "broad federal investigation" was to a grand jury investigation as opposed to the SEC or some other parallel investigation. And the third statement – that Blaszczak was cooperating with the government and could face criminal charges – is even less helpful to him. The assertion that he was cooperating with the government was wrong and thus could not have been a matter occurring before the grand jury. And the statement that he could face criminal charges, without more, said nothing about anything that was happening in a grand jury.

Blaszczak nevertheless argues that these matters come within Rule 6(e) because information about the strategy or direction of a grand jury investigation, including the identity of grand jury targets, is protected.[34] But Blaszczak, at least to a considerable degree, begs the question by assuming that those statements referred to a grand jury investigation. In any case, while the Court acknowledges the general principle to which Blaszczak refers, it is obliged also to bear in mind that "whether a particular matter is related to a matter occurring before a grand jury . . . depends entirely upon a fact-specific inquiry.[35] And the context here dramatically undermines Blaszczak's position because any of these statements may have been made on the basis of information concerning the SEC investigation, and the activities of the USAO and the FBI prior to presentation of the case to the grand jury as opposed to information about the grand jury's proceedings, strategy or direction.

That leaves the fact that "a person familiar with the probe" reportedly identified Blaszczak as the person referred to as a "co-conspirator" and "political consultant" in previously

---

[34] DI 73, at 6-7.

[35] *In re Grand Jury Subpoena,* 103 F.3d at 239.

public SEC and DOJ documents coupled with the statements that (1) the documents were part of "*criminal* and civil insider-trading cases *against the former Visium manager*" and (2) Blaszczak "could face criminal charges." These statements, especially taken together, indicate that Blaszczak probably was under criminal investigation. But the article did not identify Blaszczak as a target of a grand jury,[36] and the inference that these statements refer to matters occurring before a grand jury is too weak a reed upon which to rest a *prima facie* case of a Rule 6(e) violation. But the Court does not rest on that conclusion alone.

*Did the August 2016 Article Sufficiently Suggest its Information Was From the Government?*

Even if the August 2016 article had contained information protected by Rule 6(e), Blaszczak nevertheless would have failed to make out a *prima facie* case of a Rule 6(e) violation for another reason. The article here does not sufficiently suggest that the source of any such information was a government attorney or agent.

First, the Article does not attribute anything to government sources. Rather, its attributions are to unspecified "people familiar with the probe."[37] And whatever might be inferred from such an attribution in other circumstances, an inference that these "people familiar with the probe" were with the government is exceptionally weak here. After all, the SEC had issued 56 subpoenas and document demands in its investigation even prior to the criminal referral to the USAO, and it appears that a significant number of witnesses had been interviewed by the time the

---

[36] And indeed he could not have been identified as such a target, because the 2016 article pre-dated the presentation of evidence to the grand jury.

[37] DI 125, Exh. C.

2016 Article appeared. The universe of subpoena recipients, witnesses, lawyers representing both categories of people, and legal support staff members unaffiliated with the government who, to one degree or another, reasonably could have been described as "people familiar with the probe" doubtless was substantial. And whatever Chaves previously had done with regard to the *Walters* Investigation does not add materially to the likelihood that Chaves was the source of anything in the 2016 Article because the *Walters* disclosures occurred much earlier. Blaszczak has not sustained his burden of showing that Chaves disclosed any matter occurring before a grand jury relevant to Blaszczak.

Second, the substance of the 2016 Article does not point to the government as a source. The most obvious flaw in Blaszczak's argument insofar as it rests on the content of the 2016 Article is that the article's statement that Blaszczak was cooperating with the government simply was false.[38] Of course, it is not absolutely impossible that no government source ever would leak incorrect information of that character. But the far simpler and overwhelmingly more likely conclusion is that the source of the assertion that Blaszczak was cooperating with the government was not a government agent but, instead, either that some person "familiar" with incomplete information speculated incorrectly to a reporter.

The substance of the other "facts" that the article attributed to "people familiar with the probe" do not support Blaszczak either. As noted, the pool of people who could have said that Blaszczak was the "co-conspirator" and "political consultant" referred to in the public SEC-DOJ documents, that he was under investigation, and that he could face criminal charges was large and

---

[38] Blaszczak has so admitted. DI 118, at 5.

by no means limited to the government.[39]

* * *

In sum, it is the defendant's burden to make out a *prima face* case of a Rule 6(e) violation. The 2014 Article, even if not entirely irrelevant because it long preceded the grand jury, is unhelpful to him. The 2016 Article does not contain "matters occurring before the grand jury." In any case, neither the article's attribution of sources – unspecified "people familiar with the probe" – nor its substance sufficiently points to the government. Viewing the information presented here as a whole, the defendant has not met his burden of making out a *prima facie* case that the information in the *Wall Street Journal* articles about Blaszczak came from a government agent or attorney a government sources disclosed "matters occurring before the grand jury" that appeared in those articles.

*Prejudice*

Finally, even if Blaszczak had made out a *prima facie* case of a violation – and he has not – he has failed to articulate any cognizable theory of prejudice. Instead, he relies almost entirely on the notion that *Bank of Nova Scotia v. United States*[40] instructs that "a showing of prejudice is not

---

39 *See Skelos*, 2015 WL 6159326, at *12 ("[T]he scope and nature of this case undermines the assumption that information included in the articles could only have come from the Government. . . . [H]undreds of individuals not covered by Rule 6(e) who would have had information about the existence and aspects of the investigation . . . could have provided [it] to members of the press.").

40 487 U.S. 250 (1988).

a necessary pre-requisite to relief for systematic violations of Rule 6(e)."[41] The argument is unpersuasive.

Blaszczak relies on the following language in the opinion: "[W]e note that we are not faced with a history of prosecutorial misconduct, spanning several cases, that is so systematic and pervasive as to raise a substantial and serious question about the fundamental fairness of the process which resulted in the indictment."[42] Blaszczak argues that this language means that in a case where there *is* a history of systemic and pervasive prosecutorial misconduct, a showing of specific prejudice is not necessary. This Court, however, does not read *Bank of Nova Scotia* as instructing that the question of prejudice may be discarded.

To begin, the passage upon which Blaszczak relies itself says that systemic and pervasive conduct "raise[s] a substantial and serious *question* about the fundamental fairness of the process."[43] In other words, such misconduct may create a question about the fairness of the grand jury process generally – it may be evidence that in an appropriate case might be relied upon to find prejudice – but prejudice in any case must be demonstrated.

---

41

DI 118, at 3 n.1.

Defendant argues also that he may have been prejudiced by the false assertion in the article that he was cooperating with the government. *Id.* at 4. His theory is that this statement "could have encouraged other alleged co-conspirators to cooperate and implicate Mr. Blaszczak." *Id.* The Court, however, find this implausible. In addition, as discussed *supra*, the *false* information in the article cannot be the basis of a Rule 6(e) violation, as false information of this sort is not a "matter occurring before the grand jury." In any case, the Court has reviewed the transcript of the grand jury proceedings. It contains nothing that conceivably could support this theory.

42

*Bank of Nova Scotia*, 487 U.S. at 259.

43

*Id.* (emphasis added).

This view finds support in other language from *Bank of Nova Scotia*:

> "To be distinguished from the cases before us are a class of cases in which indictments are dismissed, without a particular assessment of the prejudicial impact of the errors in each case, because the errors are deemed fundamental. These cases may be explained as isolated exceptions to the harmless-error rule. We think, however, that an alternative and more clear explanation is that these cases are ones in which the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, *allowing the presumption of prejudice. . . . . The nature of the violation allowed a presumption that the defendant was prejudiced*, and any inquiry into harmless error would have required unguided speculation."[44]

Accordingly, there might be cases in which there is "systematic and pervasive" misconduct that warrants an inference of prejudice. The violation must have been one that, by its nature, "compromise[s]" "the structural protections of the grand jury . . . [so as to] render the proceedings fundamentally unfair."[45] And the *Bank of Nova Scotia* Court gave as examples of such violations race- or sex-based discrimination in the selection of the grand jury,[46] misconduct that certainly could give rise to an inference, in a proper case, that an indicted person of the disfavored class of persons had been prejudiced. But Blaszczak has not articulated any rationale as to how the violations he alleges could have rendered the grand jury proceedings that resulted in his indictment fundamentally unfair.

Accordingly, Blaszczak's motion fails both for want of a *prima facie* case of a Rule 6(e) violation and, in any event, for lack of a basis for finding prejudice.

---

44 *Id.* at 256-57 (citations omitted).

45 *Id.*

46 *Id.*

*Conclusion*

For the reasons stated above, defendant's motions for discovery or dismissal of the indictment [DI 73] and for a hearing [DI 118] are denied.

SO ORDERED.

Dated: March 12, 2018

Lewis A. Kaplan
United States District Judge