SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA   :
             :
   - v -        :   **17 Cr. 357 (LAK)**
             :
**DAVID BLASZCZAK et al.**,   :
    Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# MEMORADNUM OF LAW IN SUPPORT OF
## DAVID BLASZCZAK'S MOTION FOR SEVERANCE

Federal Defenders of New York
Attorneys for Defendant
**David Blaszczak**
52 Duane Street - 10th Floor
New York, NY 10007
Tel.: (212) 417-8700

David E. Patton
Sabrina P. Shroff
Clay H. Kaminsky
Danielle E. Thorne
  Of Counsel

TO:  Geoffrey Berman
    United States Attorney
    Southern District of New York
    One St. Andrew's Plaza
    New York, NY 10007
Attn:  Ian McGinley
    Joshua Naftalis
    Brooke Cucinella
      Assistant United States Attorney

## Introduction

David Blaszczak moves this Court for a severance from his co-defendants and an adjournment of his trial date.  Mr. Blaszczak moves on two separate, independent grounds:

<u>First</u>, severance is required to preserve Mr. Blaszczak's Sixth Amendment right to confront the witnesses against him. The government's intention to introduce proffer statements allegedly made by co-defendant Christopher Worrall that incriminate Mr. Blaszczak would deprive him of his Sixth Amendment rights. <u>See</u> <u>Bruton v. United States</u>, 391 U.S. 123 (1968). The nature of both the statements at issue and the allegations in the indictment make it impossible to redact the statements in a way that does not make it obvious that the original statements, as recorded by the government, incriminated Mr. Blaszczak. <u>See</u> <u>Gray v. Maryland</u>, 523 U.S. 185 (1998); <u>United States v. Taylor</u>, 745 F.3d 15, 29 (2d Cir. 2014).

The issue is further complicated because it seems likely, based on Mr. Worrall's filing yesterday, Docs. 157–58, that there will be a factual dispute at trial between the government and Mr. Worrall about what was actually said by Mr. Worrall in his proffer sessions.  It is impossible for Mr. Worrall and the government to present testimony from conflicting witnesses about what was said in the proffers while also assuring that the testimony is properly "*Brutonized*" (even if that were possible in the absence of such competing testimony).

<u>Second</u>, severance and an adjournment of the trial date are necessary because Mr. Blaszczak's counsel cannot be adequately prepared to try this case on April 2.  The staggering amount of discovery (which continues to be produced) and the recent advancing of the trial date by a week have made it impossible for Mr. Blaszczak's counsel to render effective assistance of counsel on the current schedule.

At present the government has identified 24 fact witnesses, not including any document custodians, whom it intends to call at trial and more than 1100 exhibits that it intends to introduce.  Given the volume of this evidence and the anticipated defense case, it is not at all clear to us how this case can be tried in four weeks. What is clear is that we will not be ready by April 2.

## I.  The *Bruton* problems are insurmountable at a joint trial.

### A.   *Procedural History*

Mr. Blaszczak first raised the <u>Bruton</u> issue in his October 27, 2017 pretrial motions.  We wrote:

1

> The government has not produced to Mr. Blaszczak any statement that a codefendant may have made to law enforcement. Such a statement may be admissible against the codefendant who made the statement but would be inadmissible against Mr. Blaszczak under the Sixth Amendment's Confrontation Clause and Federal Rules of Evidence 801–802. In the event that the government manifests an intent to admit any such statement at trial, Mr. Blaszczak reserves the right to move at that time for severance or other appropriate relief under Federal Rule of Criminal Procedure 14.

David Blaszczak's Pretrial Motions, Doc. 73, at 21. The government did not respond on this point in its written opposition or otherwise disclose to us whether or not it intended to admit any such statement at that time.

On February 9, 2018, the government produced in discovery FBI summary reports ("302s") and handwritten notes for three interviews agents had conducted of Mr. Worrall: an uncounseled interview at his office in 2015 and two counseled proffer sessions at the United States Attorney's office in 2016, pursuant to a proffer agreement with the government.

After again noting the <u>Bruton</u> issue on the March 13 conference call with the Court, Mr. Blaszczak's counsel and Mr. Worrall's counsel spoke with the government to see whether it could be resolved. Two things became clear: First, the government would take a very broad view of what arguments by Mr. Worrall's counsel would "open the door" to use of "inconsistent" statements made pursuant to the proffer agreement. Second, there is a substantial factual dispute between Mr. Worrall and the government as to what Mr. Worrall actually said during those proffer sessions. Both parties are prepared to present evidence on that dispute, which remains pending before the Court. This dispute is the subject of Mr. Worrall's March 21, 2018 Motion *In Limine* to Enforce Proffer Agreement, Doc. 157.

On Friday, March 16, we identified for the government portions of Mr. Worrall's three statements, as recorded in the government's 302s, that we believe would violate Mr. Blaszczak's Confrontation Clause rights if admitted into evidence at a joint trial. Yesterday, March 21, the government responded with proposed redactions of those statements. As discussed below, the government's proposed redactions are wholly inadequate and only underscore the need for a severance in this case.

B.    *Relevant Facts*

The superseding indictment alleges, among other things, an insider trading conspiracy and substantive acts of insider trading in which confidential government data was allegedly conveyed from Mr. Worrall, a government employee, to Mr. Blaszczak, a health care industry consultant, who then allegedly used this confidential information to make predictions about government rule and reimbursement changes for two investment analysts, Theodore Huber and Robert Olan, who then traded on the basis of those predictions. The chain of information from Worrall to Blaszczak to Huber and Olan is the essence of the scheme alleged in the indictment.

The government has announced its intention to introduce at trial both (1) Mr. Worrall's uncounseled statements and (2), as rebuttal to Mr. Worrall's defense that he did not reveal specific confidential data, statements allegedly made by Worrall in unsuccessful proffer sessions. Mr. Worrall disputes the substance of these statements, but the government asserts that he made the following  statements that incriminate Mr. Blaszczak, among others: ██████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████[1]

These alleged statements all incriminate Mr. Blaszczak.  He will have no opportunity to cross-examine Mr. Worrall, whom we do not expect to testify at trial and cannot subpoena. It is not possible to redact these statements in a way that will not still obviously incriminate Mr. Blaszczak, because the crux of the charges is that Mr. Worrall gave confidential information to Mr. Blaszczak, who used the information to make predictions for Mr. Huber and Mr. Olan. Therefore, these alleged statements incriminate Mr. Worrall only if they also incriminate Mr. Blaszczak.

---

[1] The exhibit and the content of the statements is redacted from the publicly filed version of this memorandum pursuant to this Court's June 27, 2017 Protective Order.  In addition, given the publicity surrounding this case, pretrial public disclosure of the government's version of disputed statements could bring it to the attention of prospective jurors and witnesses, prejudicing the defense.

Yesterday, the government provided us with proposed redactions that demonstrate the impossibility of redacting these statements in a way that does not obviously identify Mr. Blaszczak. The government proposes to replace Mr. Blaszczak's name with Mr. Worrall's "former colleague who worked as a political intelligence consultant," "his political intelligence consultant friend," and—with reference to the October 2014 *Wall Street Journal* article reporting on the federal investigation into Mr. Blaszczak—"his friend who has mentioned in the article." The government's proposed redactions thus include such statements as "██████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████" These redacted statements still immediately inculpate Mr. Blaszczak.

C.     *Introduction of codefendant Worrall's proffer statements at a joint trial, even in redacted form, would violate Mr. Blaszczak's Sixth Amendment right to confront the witnesses against him.*

The Confrontation Clause bars the admission of a non-testifying co-defendant's confession that incriminates the defendant. Crawford v. Washington, 541 U.S. 36 (2004); Gray v. Maryland, 523 U.S. 185 (1998); Bruton v. United States, 391 U.S. 123. In Bruton, 391 U.S. 135-36, the Supreme Court recognized that an instruction limiting the use of the confession to prove only the guilt of the co-defendant who made it is not sufficient to protect the defendant's Sixth Amendment rights because of the overwhelming likelihood that the jury will consider the statement against the defendant. While such a confession may be redacted so that it does not incriminate the defendant, the mere deletion of the defendant's name or substitution of neutral words is not sufficient if such a redaction leaves it obvious that the confession referred to the defendant. Gray v. Maryland, 523 U.S. 185; United States v. Taylor, 745 F.3d at 28.

Redaction was sufficient in Richardson v. Marsh, 481 U.S. 200 (1987), for example, because the statement had been redacted "to omit all reference to [Marsh]—indeed, to omit all indication that *anyone* other than Martin and Williams participated in the crime." Id. at 203. Not so in Gray, however, where the redaction simply replaced the defendant's name with either a blank or the word "deleted." Gray, 523 U.S. at 196. The Supreme Court held that "redactions that replace a proper name with an obvious blank, the word "delete," a symbol, or *similarly notify the jury that a name has been deleted* are similar enough to Bruton's unredacted confessions as to warrant the same result." Id. The co-defendant's references to "Me, deleted, deleted, and a few other guys," too clearly referred to the defendant and the other participant, who had died. Id. at 188, 196. Gray distinguished the statement in Richardson, which was redacted "to eliminate not only the defendant's name, but any reference to his or her existence", and the statements in Gray, which "despite

4

redaction, obviously refer directly to someone, often obviously the defendant." <u>Gray</u>, 523 U.S. at 191-92, 196; <u>Richardson</u>, 481 U.S. at 211. A redaction is not sufficient if it is so obvious that it leaves the statement "directly accusatory," such that a juror who wonders to whom the statement might refer "need only lift his eyes to [the defendant], sitting at counsel table, to find what will seem the obvious answer." <u>Gray</u>, 523 U.S. at 194.

The Second Circuit and other Circuits have approved redaction done in "natural language" or "neutral words" only if it "sufficiently conceals the fact of explicit identification to eliminate the overwhelming probability that a jury hearing the confession at a joint trial will not be able to follow an appropriate limiting instruction." <u>United States v. Jass</u>, 569 F.3d 47, 61 (2d Cir. 2009). Not every statement can be effectively redacted. A redaction that substitutes neutral words for the defendant's name still violates <u>Bruton</u> if it leaves no doubt as to the person to whom the statement refers. The Second Circuit rejected such a redaction in <u>United States v. Taylor</u>, 745 F.3d at 29, holding that substitution of the words "two other individuals," "the driver" and "the other person," and "the other individuals" for the two non-cooperating defendants' names made it obvious that the statement had contained actual names. Further, "once it becomes obvious that names have been pruned from the text, the choice of implied identity is narrow. The unnamed persons correspond by number (two) and by role to the pair of co-defendants." <u>Id</u>. "The jury could immediately infer, on the evidence of the redacted confession alone, that Taylor had likely named the co-defendants." <u>Id</u>.

A neutral word or natural language redaction is more likely to be successful if the confession refers to one or more others who are indistinguishable and the case involves multiple defendants, rather than referring to one person who corresponds to a particular co-defendant. <u>Compare</u> <u>United States v. Lyle</u>, 856 F.3d 191, 205 (2d Cir. 2017)("Lyle's statements referred to *multiple* people–not only one unnamed person to correspond to the one co-defendant" and the evidence established multiple participants) <u>and</u> <u>United States v. Straker</u>, 800 F.3d 570, 599 (D.C. Cir. 2015)(where confessions referred to more than one unidentified person and there were seven defendants and multiple uncharged co-conspirators, jury would not inevitably link the references to any particular defendant) <u>with</u> <u>Taylor</u>, 745 F.3d at 29 (redaction violated <u>Bruton</u> where "the two unnamed persons corresponded by number (two) and role to the pair of codefendants") <u>and</u> <u>Vasquez v. Wilson</u>, 550 270, 281-82 (3rd Cir. 2008)("[I]n a <u>Gray</u> analysis the number of persons involved is significant," and where the unidentified shooter in driver's confession could only have been the single alleged shooter on trial, neutral pronoun redaction was ineffective under <u>Bruton</u>).

In this case, any redaction would necessarily leave it obvious that the statement had named another person because the crux of the alleged statements—and the crimes charged—is that Mr. Worrall gave confidential information to a particular individual, who used that information to further trades. Therefore the existence of that person cannot be redacted. And, just as in <u>Taylor</u>, 745 F.3d at 29, "once it becomes obvious that [a] name[] has been pruned from the text, the choice of implied identity is narrow." The unnamed person corresponds by number and role to the only person alleged to have received information from Mr. Worrall: Mr. Blaszczak. The corresponding roles of Mr. Worrall and Mr. Blaszczak are set forth in the charges of the indictment itself, so that any neutral reference to Mr. Blaszczak "would 'immediately' inculpate [him] in the charged crime," even if it were "the very first item introduced at trial." <u>See</u> <u>Jass</u>, 569 F.3d at 61. Unlike the situation where the confessing defendant admits to committing a crime with "a few other guys" but is independently guilty whether or not the "other guys" participated, <u>see</u> <u>id.</u>, at 59, Mr. Worrall's statements could only incriminate him, indeed are only relevant, if they refer to Mr. Blaszczak—whether camouflaged as a "friend," an "acquaintance," "another person," or in any other "natural language" or "neutral word" form.

Indeed the government's proposed redactions only reinforce the intractability of the <u>Bruton</u> problems here. The extreme awkwardness of references like "former colleague who worked as a political intelligence consultant," "political intelligence consultant friend," and "friend who has mentioned in the article," which are repeated in stilted circumlocutions, make it obvious that a name has been replaced. <u>See</u> <u>Taylor</u>, 745 F.3d at 29 (the "awkward" and "stilted circumlocutions" made it obvious that the references were substituted). They are obvious stand-ins for Mr. Blaszczak's name. <u>See</u> <u>United States v. Hoover</u>, 246 F.3d 1054, 1059 (7th Cir. 2001) (the substitution of "incarcerated leader" and "unincarcerated leader" for the two defendants did not solve the <u>Bruton</u> problem because those terms were "obvious stand-ins" for the names of the defendants). As the government knows, the statements must in fact point to Mr. Blaszczak to have any relevance to the government's case.

> D. *If the codefendant's incriminating statements could theoretically be redacted to satisfy Bruton, the redaction itself and the factual dispute at trial about the substance of those statements would inevitably prejudice Mr. Blaszczak.*

Other statements alleged to have been made by Mr. Worrall are of a more equivocal nature and would make any redaction obvious to the jury for an additional reason. The "neutral pronoun" or "natural language" redaction is based on the premise that an effective redaction will use language that the confessing

defendant would naturally have used if he wished to confess his guilt but shield his confederates. <u>See</u> <u>United States v. Taylor</u>, 745 F.3d at 29; <u>United States v. Starker</u>, 800 F.3d 570, 598 (D.C. Cir. 2015). But some of Mr. Worrall's statements are less in the nature of a confession and more exculpatory in nature; they minimize his disclosures and suggest that he resisted Mr. Blaszczak's efforts to pry information from him. It makes no sense in this context that Mr. Worrall would have tried to shield Mr. Blaszczak by refusing to identify him.

Even if effective redaction were possible, it would make these statements seem more incriminating than they really are, and be prejudicial in a different way. That is, if the jury were led to believe that Mr. Worrall was trying to shield Mr. Blaszczak—the false narrative that the jury is *supposed to believe* under "natural language" redaction—it could only conclude that Mr. Worrall considered his statements to be very incriminating, more incriminating than they really are. Mr. Worrall disputes the particulars of these statements as set forth by the government and will in all likelihood contend at trial that the statements were in fact exculpatory. <u>See</u> Christopher Worrall's Memorandum of Law in Support of his Motion to Enforce His Proffer Agreement, Doc. 158. The consciousness of guilt demonstrated by his purported effort to "shield" Mr. Blaszczak—*which is not even true*—would affect this factual dispute in the government's favor, prejudicing both defendants.

In addition, the factual dispute at trial over what Mr. Worrall actually said in his proffers will make it impossible to contain the redactions and preserve the fiction that Mr. Worrall did not identify the person whom he allegedly "tipped." Mr. Worrall has moved to preclude or limit the use of his proffer statements at trial on the ground that they do not contradict his defense. He contends that the government's version of those statements are incorrect and that his attorney's notes show that the statements differed meaningfully from those reported by government agents. He has asked the Court to make a preliminary finding on the disputed substance of the statements in order to decide whether any of them are actually inconsistent with defense positions at trial. If the Court rules that any of these statements are admissible, the substance of the statements will be challenged at trial. On cross-examination, Mr. Worrall's counsel will need to tease out in detail the questions and answers of the proffer session, which will make it impossible to preserve the redactions and protect Mr. Blaszczak's rights under <u>Bruton</u>. In sum, this unusual situation will make it impossible to admit the proffer statements and protect the confrontation rights of both defendants.

## II.   Mr. Blaszczak's counsel cannot be prepared for the April 2 trial date.

Counsel for Mr. Blaszczak will not be ready by April 2 to represent Mr. Blaszczak effectively at trial on the superseding indictment.  In June 2017 the

Government estimated a two-to-three week trial, and the Court relied on that estimate to schedule trial for April 9, 2018.  For nine months all parties prepared for trial on that date.  Given the size and complexity of this case, the government agreed to produce § 3500 material and exhibits to defense counsel 28 days in advance, on March 12, 2018.  Mr. Blaszczak's attorneys at the Federal Defenders of New York, who have enormous commitments to other clients, relied on these dates in allocating limited resources, including numerous sentences and other court appearances.

Counsel were already struggling with the staggering amount of discovery in this matter—more than 15 million documents—when the government filed its superseding indictment on March 5.  The superseder doubled the length of the charged conspiracy from three to six years, bringing additional CMS rulemaking cycles and a huge volume of additional communications within its ambit.

On March 9, the government revised its trial estimate upward to four weeks.  On March 13, over Mr. Blaszczak's objection, this Court advanced the trial date by one week, to April 2, and jury selection by two weeks, to March 26.

The government made a partial production of § 3500 material and exhibits the evening of March 13 (totaling five bankers' boxes of material) and produced additional material later in the week. Almost every day since, the government has produced additional material.  The changes to the trial schedule mean that Mr. Blaszczak has nine fewer days with these materials to prepare for trial, even as the scope of the charged conspiracy has increased.

Meanwhile, the government has provided a witness list of 24 fact witnesses, including two cooperating witnesses and zero document custodians. Given the government's witness list and the anticipated defense case, it is not clear to us how this case can be tried in four weeks.  Despite our requests, the government has refused to state whether it will actually call all of those witness or to identify who it anticipates its first five witnesses will be.

As counsel to Mr. Blaszczak, we have made extraordinary efforts to grapple with these challenges and to be ready for trial by the April 2 date set by the Court.  But it has become apparent that we will simply not be ready to give Mr. Blaszczak effective representation on the new schedule.  If the other defendants can be ready on April 2 and wish to proceed on that date, the Court should sever the case against Mr. Blaszczak, including Counts 17 and 18 which charge Mr. Blaszczak alone and which have been the subject of prior severance applications.

## Conclusion

For the foregoing reasons, we respectfully request that the Court sever Mr. Blaszczak's trial from the trial of his co-defendants and adjourn his trial date.

Respectfully submitted,

David Patton
Federal Defenders of New York, Inc.
By:  /s/
David E. Patton
Sabrina P Shroff
Clay Kaminsky
Danielle E. Thorne
Attorneys for Defendant
       David Blaszczak
52 Duane Street – 10th Floor
New York, New York 10007
Tel.: 212 417-8700

9

# EXHIBIT A

*Redacted*