UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
: 
UNITED STATES OF AMERICA :
:
- v. - : S1 17 Cr. 357 (LAK)
:
DAVID BLASZCZAK, :
THEODORE HUBER, :
ROBERT OLAN and :
CHRISTOPHER WORRALL, :
:
Defendants. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

## GOVERNMENT'S OPPOSITION TO
## DEFENDANTS' *IN LIMINE* MOTIONS

ROBERT KHUZAMI
Acting United States Attorney for the
Southern District of New York

Ian McGinley
Joshua A. Naftalis
Brooke E. Cucinella
Assistant United States Attorneys
   - Of Counsel-

**TABLE OF CONTENTS**

POINT I: THE COURT SHOULD DENY BLASZCAK'S SEVERANCE MOTION ................... 1

    A.   Background ........................................................................................................... 1

    B.   Applicable Law .................................................................................................... 2

    C.   Discussion ............................................................................................................ 5

        1.   Worrall's Statements Will Be Properly Redacted ............................................. 5

        2.   Blaszczak Does Not Need Additional Time to Prepare for Trial ..................... 9

POINT II: WORRALL'S MOTION REGARDING HIS STATEMENTS AT PROFFERS IS PREMATURE ..................................................................................................................11

POINT III: OLAN'S MOTION TO BAR THE GOVERNMENT FROM PROPERLY ASSERTING THE STOCK MARKET SHOULD BE "A LEVEL PLAYING FIELD" SHOULD BE DENIED ................................................................................................12

CONCLUSION ................................................................................................................14

# **TABLE OF AUTHORITIES**

**Cases**

*Bailey* v. *United States,* 516 U.S. 137 S.Ct. 501, 133 L.Ed.2d 472 (1995) ..................................... 5

*Bourjaily* v. *United States*, 483 U.S. 171 (1987) ........................................................................ 12

*Dirks* v. *SEC*, 463 U.S. 646 (1983).............................................................................................. 13

*Richardson* v. *Marsh*, 481 U.S. 200 (1987)......................................................................... 2, 4, 6

*Salman* v. *United States*, 137 S.Ct. 420 (2017) .......................................................................... 13

*United States* v. *Alvarado,* 882 F.2d 645 (2d Cir.1989) ................................................................ 5

*United States* v. *Attenasio*, 870 F.2d 809 (2d Cir. 1989) .............................................................. 4

*United States* v. *Barrow*, 400 F.3d 109 (2d Cir. 2005).............................................................. 11

*United States* v. *Benitez*, 920 F.2d 1080, 1087 (2d Cir. 1990) ..................................................... 6

*United States* v. *Bin Laden*, 109 F. Supp. 2d 211 (S.D.N.Y. 2000)............................................... 4

*United States* v. *Bonventre*, 646 F. App'x 73 (2d Cir. 2016) ....................................................... 8

*United States* v. *Cardascia*, 951 F.2d 474 (2d Cir. 1991) ............................................................ 3

*United States* v. *Carson*, 702 F.2d 351 (2d Cir. 1983) ................................................................. 4

*United States* v. *Casamento*, 887 F.2d 1141 (2d Cir. 1989) ......................................................... 3

*United States* v. *Castro,* 813 F.2d 571 (2d Cir.1987) ................................................................... 5

*United States* v. *Freyer*, 333 F.3d 110 (2d Cir. 2003) .................................................................. 4

*United States* v. *Jass*, 569 F.3d 47 (2d Cir. 2009) .................................................................... 6, 7

*United States* v. *Jimenez*, 824 F. Supp. 351 (S.D.N.Y. 1993) ...................................................... 3

*United States* v. *Kyles*, 40 F.3d 519 (2d Cir. 1994) ..................................................................... 6

*United States* v. *Lasanta*, 978 F.2d 1300 (2d Cir. 1992) ......................................................... 3, 4

*United States* v. *Losada*, 674 F.2d 167 (2d Cir. 1982) ................................................................. 4

*United States* v. *Lyles*, 593 F.2d 182 (2d Cir. 1979)..................................................................... 4

*United States* v. *Panza*, 750 F.2d 114 (2d Cir. 1984) ................................................................... 3

*United States* v. *Potamitis*, 739 F.2d 784 (2d Cir. 1984) .................................................................. 4

*United States* v. *Rivera*, 2015 WL 1725991 (E.D.N.Y. Apr. 15, 2015) ...................................... 11

*United States* v. *Rosa*, 11 F.3d 315 (2d Cir. 1993) ........................................................................ 3

*United States* v. *Rosemond*, 841 F.3d 95 (2d Cir. 2016) ............................................................. 11

*United States* v. *Salameh*, 152 F.3d 88 (2d Cir. 1998) .................................................................. 4

*United States* v. *Saneaux*, 365 F. Supp. 2d 493 (S.D.N.Y. 2005) ................................................ 12

*United States* v. *Stewart*, 15 Cr. 287 (LTS) ................................................................................. 13

*United States* v. *Taylor,* 745 F.3d 15 (2d Cir. 2014) .................................................................. 6, 7

*United States* v. *Tutino*, 883 F.2d 1125 (2d Cir. 1989) .................................................................. 6

*United States* v. *Walters*, 16 Cr. 338 (PKC) ................................................................................ 13

*United States* v. *Williams*, 936 F.2d 698 (2d Cir. 1991) ............................................................ 6, 7

*United States* v. *Yousef,* 327 F.3d 56 (2d Cir. 2003) .................................................................. 5, 6

*United States* v. *Zackson*, 6 F.3d 911 (2d Cir. 1993) .................................................................... 4

*Zafiro* v. *United States*, 506 U.S. 534 (1993) ....................................................................... 2, 3, 4

The Government respectfully submits this memorandum of law in opposition to (a) defendant David Blaszczak's eleventh-hour motion to sever (Dkt. 164); (b) defendant Christopher Worrall's premature motion regarding the admissibility of the inculpatory statements he made to the Government pursuant to a proffer agreement (Dkt. 158); and (c) defendant Robert Olan's motion to preclude the Government from addressing what the evidence will show and why that conduct is prohibited by law. (Dkt. 161). Each one of these motions should be denied.

## POINT I

## THE COURT SHOULD DENY BLASZCAK'S SEVERANCE MOTION

### A.  Background

On February 9, 2018, the Government produced to each defendant — including Blaszczak — a copy of the FBI 302s reflecting (a) the unprotected statements that Worrall made when he was first approached by the FBI in September 2015, and (b) the statements that Worrall made in two subsequent meetings with the Government — pursuant to a standard proffer agreement.[1]

Approximately five weeks later, on March 16, 2018, Blaszczak's counsel first attempted to engage with the Government on potential redactions to these FBI 302s to "Brutonize" them. Specifically, Blaszczak highlighted various sentences in each of the FBI 302s and suggested that these sentences be redacted in their entirety.

On March 21, 2018, the Government responded to Blaszczak's counsel to advise them that, although the Government had not yet determined which statements it intends to introduce at trial, it nonetheless had attempted to anonymize — consistent with the law in this Circuit — any

---

[1]  The Government had previously produced copies of these 302s to Worrall in June 2017, shortly after the original Indictment in this case issued, as part of its Rule 16 discovery.

1

statement in the FBI 302s that could potentially present a *Bruton* issue. The Government provided a copy of its draft anonymized statements Blaszczak's counsel. The Government invited defense counsel to make suggested edits, or to call the Government to discuss other potential solutions in advance of trial, so as to avoid unnecessary motion practice.

On March 22, 2018, Blaszczak's counsel emailed the Government and indicated that they would not be suggesting edits but would instead be filing a motion for severance. The instant motion — filed four days before jury selection — followed later that day.

### B.     Applicable Law

The Supreme Court has made plain that there is a "preference in the federal system for joint trials of defendants who are indicted together." *Zafiro* v. *United States*, 506 U.S. 534, 537 (1993). This preference reflects a settled precept in criminal law: joint trials "play a vital role in the criminal justice system." *Richardson* v. *Marsh*, 481 U.S. 200, 209 (1987). They promote efficiency and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Id.* at 210; *Zafiro*, 506 U.S. at 537. Joint trials of defendants indicted together also serve to "conserve prosecutorial resources, diminish inconvenience to witnesses, and avoid delays in the administration of criminal justice." *Richardson*, 481 U.S. at 217 (1987) (Stevens, J., dissenting). The *Richardson* Court explained:

> It would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability — advantages which sometimes operate to the defendant's benefit.

*Id.* at 210 (footnote omitted). Thus, even where joint trials invite some prejudice to defendants, "[t]he risks of prejudice attendant in a joint trial are presumptively outweighed by the conservation of time, money, and scarce judicial resources that a joint trial permits." *United States* v. *Jimenez*, 824 F. Supp. 351, 366 (S.D.N.Y. 1993).

The presumption in favor of joint trials is so strong that the Second Circuit has stated that "[t]he principles that guide the district court's consideration of a motion for severance usually counsel denial." *United States* v. *Rosa*, 11 F.3d 315, 341 (2d Cir. 1993). Indeed, "[t]he decision whether to sever multi-defendant trials is committed to the sound discretion of the trial court and is 'virtually unreviewable.'" *United States* v. *Lasanta*, 978 F.2d 1300, 1306 (2d Cir. 1992) (abrogated on other grounds) (quoting *United States* v. *Cardascia*, 951 F.2d 474, 482 (2d Cir. 1991)). A defendant seeking severance therefore shoulders the "extremely difficult burden" of showing that he would be so prejudiced by joinder that he would be denied a fair trial. *United States* v. *Casamento*, 887 F.2d 1141, 1149 (2d Cir. 1989) (internal quotation marks omitted). It is not enough for a defendant to show that he "may have a better chance of acquittal in [a] separate trial[]." *Zafiro*, 506 U.S. at 540.

"[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539; *see also United States* v. *Panza*, 750 F.2d 1141, 1149 (2d Cir. 1984) (explaining that prejudice must be "sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials"). Even in those rare instances where a defendant establishes a "high" risk of prejudice, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*,

506 U.S. at 539 (citing *Richardson*, 481 U.S. at 211); *see also United States* v. *Freyer*, 333 F.3d 110, 114 (2d Cir. 2003).

The presumption in favor of joint trials "is particularly strong where, as here, the defendants are alleged to have participated in a common plan or scheme." *United States* v. *Salameh*, 152 F.3d 88, 115 (2d Cir. 1998). *See also Freyer*, 333 F.3d at 114 (holding that joinder of defendants is "proper when the alleged acts are 'unified by some substantial identity of facts or participants and a common plan.'" (quoting *United States* v. *Attenasio*, 870 F.2d 809, 815 (2d Cir. 1989))); *United States* v. *Bin Laden*, 109 F. Supp. 2d 211, 214 (S.D.N.Y. 2000) ("When more than one defendant is accused of participating in the same act or transaction or series of acts or transactions, federal law expresses a strong preference for a single, joint trial of all defendants.")

Even where evidence is admissible against only one defendant in a multi-defendant case, severance is not typically granted. The Second Circuit has repeatedly recognized that "the fact that evidence may be admissible against one defendant but not against another does not necessarily require a severance." *United States* v. *Carson*, 702 F.2d 351, 367 (2d Cir. 1983); *see also United States* v. *Losada*, 674 F.2d 167, 171 (2d Cir. 1982); *United States* v. *Lyles*, 593 F.2d 182, 190 (2d Cir. 1979). Any spillover prejudice that may occur is generally corrected by the Court's instruction that the jury consider the guilt of each defendant individually — an instruction that jurors are presumed to be able to follow. *United States* v. *Potamitis*, 739 F.2d 784, 790 (2d Cir. 1984); *see also Lasanta*, 978 F.2d at 1307 (2d Cir. 1992) ("[t]he district court countered any possible spillover with specific instructions to the jury . . . that the jury should consider the evidence separately against each defendant"); *United States* v. *Zackson*, 6 F.3d 911, 922 (2d Cir. 1993).

With respect to *Bruton concerns,* in particular, the Second Circuit has found that "various remedies short of severance are available to the district court, including, *inter*

4

*alia,* issuing limiting instructions to the jury, empaneling separate juries, or redacting out-of-court statements that refer to a codefendant by name," instructing that "such redactions are permissible so long as the redaction does not distort the statements' meaning, exclude substantially exculpatory information, or change 'the tenor of the utterance as a whole.'" *United States* v. *Yousef*, 327 F.3d 56, 150 (2d Cir. 2003) (citing *United States* v. *Alvarado,* 882 F.2d 645, 651 (2d Cir.1989) (internal quotation marks and citation omitted), *overruled on other grounds, Bailey* v. *United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995); *see also United States* v. *Castro,* 813 F.2d 571, 576 (2d Cir.1987)).

    **C.    Discussion**

        **1.    Worrall's Statements Will Be Properly Redacted**

Contrary to the hyperbolic concerns catalogued in Blaszczak's motion, severance is not warranted here under either *Crawford* or *Bruton*. Worrall's statements are admissible against Worrall as a party admission. Fed. R. Evid. 801(d)(2). To the extent they implicate Blaszczak, the Government agrees that the Confrontation Clause is implicated because they are testimonial in nature. But contrary to Blaszczak's claim, this does not present an incurable *Bruton* problem. Indeed, the whole point of *Bruton* is to anonymize the statements so as to protect the defednats' rights while allowing the Government to prove its case. This process is routinely accomplished in this District and across the country. Rather than engage constructively on how to "Brutonize" the statements, however, counsel for Blaszczak have thrown up their hands and demanded severance. This is not the law.

As the Government has suggested, Worrall's statements can be redacted to eliminate the use of Blaszczak's name — a practice that is commonplace in this District and has been upheld, repeatedly, by the Second Circuit. *See*, *e.g.*, *United States* v. *Tutino*, 883 F.2d 1125, 1135 (2d Cir.

5

1989) (approving substitution of neutral words "others," "other people," and "another person" for names of co-defendants in confession of non-testifying defendant); *Yousef*, 327 F.3d at 149 (upholding redaction of co-defendant's name to "my neighbor"); *United States* v. *Kyles*, 40 F.3d 519, 526 (2d Cir. 1994) (upholding redaction of co-defendant's name to "he"); *United States* v. *Williams*, 936 F.2d 698, 701 (2d Cir. 1991) (upholding redaction of co-defendant's name to "this guy"); *United States* v. *Benitez*, 920 F.2d 1080, 1087 (2d Cir. 1990) (upholding redaction of co-defendant's name to "friend").

The Second Circuit reaffirmed this line of cases and this practice in *United States* v. *Jass*, 569 F.3d 47, 61 (2d Cir. 2009). There, the Circuit affirmed the admission of a co-defendant's post-arrest confession where the district court instructed the jury not to use the confession in any way against defendant, and the confession was redacted in a way that permitted the jury to follow the limiting jury instruction. *Id.* at 63-64. Specifically, the defendant's name was redacted from his co-defendant's confession, and the jury would have had to refer to *other* trial evidence to link the defendant to the redacted confession. The Second Circuit instructed that:

> while redaction may not cure all *Bruton* issues, the "critical inquiry is, thus, not whether a jury might infer from other facts (whether evidence admitted at trial or circumstances such as the number of defendants on trial) that a declarant's neutral allusion to a confederate might have referenced the defendant. It is whether the neutral allusion sufficiently conceals the fact of explicit identification to eliminate the overwhelming probability that a jury hearing the confession at a joint trial will not be able to follow an appropriate limiting instruction.

*Id.* at 60 (citing *Richardson* v. *Marsh*, 481 U.S. 200, 208 (1987)).

The Circuit recently reinforced this guidance, and provided additional instruction on an issue left open by *Jass*, in *United States* v. *Taylor,* 745 F.3d 15, 28–30 (2d Cir. 2014). There, the Circuit rejected redactions that strongly suggested that the original statement contained an actual name (such as the name of the defendant). *Id.* at 28. For example, the admitted statements used

6

the name of the cooperator throughout, awkwardly conjoined with reference to persons who went unnamed. *Id.* The Court found that if the declarant "had been trying to avoid naming his confederates, he would not have identified one of them . . . in the very phrase in which the names of the other confederates are omitted." *Id.* at 29. Moreover, the Court expressed concern that the wording of the statement suffered "from stilted circumlocutions," and instructed that although "*Jass* does not require the most natural and colloquial rendering of how a drug thief would have shielded the identity of his confederates . . . the awkward circumlocution used to reference other participants, coupled with the overt naming of [the cooperator] (only), is so unnatural, suggestive, and conspicuous as to offend *Bruton*, *Gray*, and *Jass*." *Id.* at 30.

Following the test laid out in *Jass* and *Taylor,* the Court here will have to review Worrall's redacted statements that the Government seeks to offer to (i) to confirm that they do not "indicat[es] to the jury that the original statement contained actual names"; and (2) to determine "whether the redacted confession, even if 'the very first item introduced at trial' would 'immediately' inculpate [Blaszczak] in the charged crime." *Taylor,* 745 F.3d. at 28; *accord Jass,* 569 F.3d at 61; *see also United States* v. *Williams*, 936 F.2d at 700-01 (considering redacted confession "in isolation from the other evidence introduced at trial" to assess whether it incriminates defendant). To the extent the Court believes additional redactions or replacements beyond those proposed by the Government are required, it obviously has the power to order additional modifications.

Contrary to Blaszczak's claim, the mechanics of this testimony during trial present no impediment to admissibility. Indeed, every case featuring "Brutonized" statements raises some of the issues articulated by the defense. But these concerns are routinely met through careful consultation among the parties and the involvement of the District Court. Consistent with the law

in this area, the testifying agent will be able to omit any mention of Blaszczak's name from the statements made by Worrall. When necessary, the agent will use neutral pronouns and/or substitutions approved by the Court that will in no way allow the jury to infer that the statement contained names (much less the names of Worrall's co-defendants). These routine concerns in no way compel severance. *See, e.g., United States* v. *Bonventre*, 646 F. App'x 73, 81 (2d Cir. 2016) (rejecting defendant's *Bruton*-based challenge to the district court's refusal to grant severance as meritless, where the statement at issue was modified consistent with *Bruton* and its progeny and a proper limiting instruction was given; finding it "irrelevant that other trial evidence implicated [the appellant] in [the declarant's] conduct").

Finally, while the Government respectfully submits that the Court can and should deny severance now in anticipation of jury selection beginning Monday, the Government submits that the issue of how exactly to "Brutonize" each statement at issue may more properly be taken up *after* the defendants' opening statements. The Government will be in a better position at that time to determine which of the many Worrall statements it intends to introduce. This may avoid *Bruton* litigation over statement that the Government ultimately declines to use at trial. This would also alleviate Blaszczak's unfounded concerns that the Government will admit other statements that call into question the validity of any Government redactions.

Accordingly, the Government respectfully submits that the most productive path forward is for the Government, following defendant Worrall's opening, to provide defense counsel and the Court with a list of the statements it intends to introduce at trial, along with its proposed

redactions and substitutions.[2] The Government will then offer those statements with any modifications the Court finds necessary. If the Court ultimately finds that the statements cannot be offered, the Government will not offer them. Either way, Blaszczak's last-ditch attempt at severance on this basis is not only unnecessary but inappropriate — just as it was the other times he attempted it.

### 2.    Blaszczak Does Not Need Additional Time to Prepare for Trial

Blaszczak contends (yet again) that he is the only defendant that cannot be prepared for trial on April 2. Like the other defendants in this matter, however, Blaszczak has long had notice of the charges and evidence against him, and the advancement of the trial date by one week does not alter his ability to defend himself. As noted below, the Government produced the 3500 material and exhibits well in advance of trial, now estimates a shorter case in chief, and has also agreed to provide the defense with notice of its anticipated witness order during the trial. Accordingly, no adjournment is necessary.

First, the defendant again complains that the Superseding Indictment filed on March 5, 2018 warrants an adjournment. The Court denied this precise argument at the March 9 court conference, for good reason — the defendants were on notice that evidence of their participation in the charged conspiracies during the expanded date range would likely have been admissible as Rule 404(b) evidence, the Government had produced all the underlying discovery for the expanded date range in the Superseding Indictment months in advance, and the underlying charges remained unchanged. (*See* Mar. 9, 2018 Tr. 43-44).

---

[2] If, of course, the Court would prefer to review a list of the statements the Government may introduce at trial and the proposed redactions and/or substitutions in advance of trial, the Government will provide that list promptly.

9

At the March 9 court conference, the Government estimated that the trial would last approximately one month. The Government has since streamlined its case-in-chief and now estimates that its case will last two to three weeks, as the Government noted during the phone conference with the Court on March 13.

After the Court advanced the trial date by one week, the Government immediately produced on March 13 the bulk of its 3500 materials and exhibits. The defendant received these materials 19 days before trial, providing ample time to prepare for the cross-examination of the Government's witnesses. As is typical in any case, the Government continues to produce 3500 and discovery materials to the defendants, but the volume of these materials is not significant, consisting mostly of notes of witness preparation sessions that took place after March 13 and documents the Government received from Deerfield on the same day it was produced to defendants (a production of less than 600 documents). Given that Blaszczak has four attorneys representing him, he has significant resources at his disposal for the efficient and timely review of these materials.

Finally, the defendant notes that the Government lists 24 fact witnesses on its witness list as a reason for an adjournment. The Government's list was intentionally comprehensive to put the defendant on notice of all the potential witnesses against him. As the Government informed the defendant by email on March 16, the Government plans to finalize this list before trial (likely reducing the number of witnesses), and the Government still anticipates that its case in chief will last two to three weeks. The Government also informed defense counsel that it will provide its initial anticipated witness order closer to the beginning of trial. Thus, the defendant's concerns about the length of the trial are overblown and his case should not be severed.

## POINT II

## WORRALL'S MOTION REGARDING HIS STATEMENTS
## AT PROFFERS IS PREMATURE

Worrall raises concerns about the protocol the Court will follow with respect to the admission of statements that Worrall made to the Government pursuant to a proffer agreement. The Government has already, of course, advised Worrall that it believes it will ultimately be for the Court to decide whether or not he has opened the door to the admission of those statements. Whether a proffer-protected statement can be admitted is a fact-intensive determination that must be undertaken on a statement-by-statement basis. *United States* v. *Rosemond*, 841 F.3d 95, 109 (2d Cir. 2016). Accordingly, the Government submits now (as it did during conversations with defense counsel) that, if it intends to offer a statement Worrall made during a proffer in response to a factual assertion or argument that his counsel makes at trial, the Government will first ask the Court to determine if the proffered statement presents an inconsistency that would properly allow for its admission under the terms of the agreement. *United States* v. *Rivera*, 2015 WL 1725991, at *3 (E.D.N.Y. Apr. 15, 2015).

Take, for instance the example in the defendant's brief: if Worrall makes the factual assertion or argues, in his opening or at another point during trial, that he did not provide Blaszczak with two February slide decks or the specific rule information, the Government agrees that it would then provide to the Court a list of the statements that it believes "fairly rebut[s] the fact asserted or evidence offered or elicited." *Rosemond*, 841 F. 3d at 107 (internal quotations and citations omitted). This is standard practice. Understandably, the law dictates that "[r]ebuttal is 'necessarily a flexible concept' and not 'limited to evidence that directly contradicts what it opposes; rather, rebuttal encompasses any evidence that the trial judge concludes fairly counters and casts doubt on the truthfulness of factual assertions advanced, whether directly or implicitly, by an adversary."

11

*Id. (citing United States* v. *Barrow*, 400 F.3d 109, 121 (2d Cir. 2005)). As such, once the nuances of the defendant's argument or factual assertion are determined, the Government will present the Court with the statements it believes counters or casts doubt on defendant's assertion or argument, and the Court can determine whether the Government may properly offer the statement.

Bizarrely, Worrall suggests that the Court would have to hold a full-blown evidentiary hearing with live testimony to determine whether Worrall actually made the statements contained in the 302s. Worrall cites no authority for this novel suggestion. Such a hearing is not only unnecessary, it would be a fruitless exercise, as the 302s themselves meet the preponderance standard the Court would apply in its role as gatekeeper. *See, e.g.,* Fed. R. Evid. 104(a); *Bourjaily* v. *United States*, 483 U.S. 171, 175 (1987) ("We are therefore guided by our prior decisions regarding admissibility determinations that hinge on preliminary factual questions. We have traditionally required that these matters be established by a preponderance of proof."); *United States* v. *Saneaux*, 365 F. Supp. 2d 493 (S.D.N.Y. 2005) (same). To the extent Worrall wants to challenge an agent's recollection about what Worrall said, he may do so through cross-examination or by offering admissible evidence of his own.

## POINT III

### OLAN'S MOTION TO BAR THE GOVERNMENT FROM PROPERLY ASSERTING THE STOCK MARKET SHOULD BE "A LEVEL PLAYING FIELD" SHOULD BE DENIED

Robert Olan has moved *in limine* to preclude the Government from "arguing at trial (including in opening or closing statements" that the stock market is 'supposed to be a level playing field'" and that "those charged with insider trading are guilty simply if they have an 'unfair advantage' over others in the market." (Dkt. 161 at 1).

12

As is clear from the opening statements that Olan cites in his papers, the Government routinely — and properly — asserts that when a defendant *illegally* obtains material, non-public information, that he or she is gaining an illegal and unfair advantage prohibited by the federal securities laws. *See*, *e.g.*, *United States* v. *Walters*, 16 Cr. 338 (PKC) (Ex. B to Esseks Decl.) ("[Insider trading is] [a] way for people who have inside information to give each other that edge, that *illegal* edge that the rest of the public never gets." (emphasis added)); *United States* v. *Stewart*, 15 Cr. 287 (LTS) (Ex. A to Esseks Decl.) ("We're here because [the stock market] is supposed to be a level playing field.  We're to hold those that *cheat, that break the law* accountable." (emphasis added)).  The Government did not state in *Walters* and in *Stewart*, or in any other insider trading case "[i]n recent years," that it is illegal for there to be an information disparity in the market.  Any attempt by Olan to suggest otherwise ignores the contact of those statements and must fail.

The Government's statements adhered to the well-settled law that that it is illegal to trade on material, non-public information obtained in breach of a duty.  *See*, *e.g.*, *Salman* v. *United States*, 137 S.Ct. 420, 423 (2017) ("The tippee acquires the tipper's duty to disclose or abstain from trading if the tippee knows the information was disclosed in breach of the tipper's duty, and the tippee may commit securities fraud by trading in disregard of that knowledge."); *Dirks* v. *SEC*, 463 U.S. 646, 661 (1983) ("In determining whether a tippee is under an obligation to disclose or abstain, it this is necessary to determine whether the insider's 'tip' constituted a breach of the insider's fiduciary duty.").  That is what the Government intends to do at this trial, and that is what the Government expects the Court will instruct the jury.  Accordingly, Olan's motion should be denied.

**CONCLUSION**

For the foregoing reasons, the Government respectfully submits that the Court should deny the defendants' motions in their entirety.

Dated: New York, New York  
      March 23, 2018

Respectfully submitted,

ROBERT KHUZAMI  
Acting United States Attorney

By: /S/_____  
Ian McGinley  
Joshua A. Naftalis  
Brooke E. Cucinella  
Assistant United States Attorneys  
Tel.: (212) 637-2257/2477/2310