UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| DAVID BLASZCZAK, | ) |
| | ) |
| THEODORE HUBER, | ) |
| | ) |
| ROBERT OLAN, and | ) |
| | ) |
| CHRISTOPHER WORRALL, | ) |
| | ) |
| Defendants. | ) |

**MEMO ENDORSED**

No. ~~17 Cr. 357 (LAK)~~

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/3/2018
```

### NOTICE OF DEFENDANTS ROBERT OLAN AND TED HUBER'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE RELATING TO NON-CMS INFORMATION

PLEASE TAKE NOTICE that upon the accompanying memorandum of law dated April

1, 2018, Defendants Robert Olan and Ted Huber, by and through their counsel, will move this

Court, before the Honorable Lewis A. Kaplan, United States District Judge, at the Daniel Patrick

Moynihan United States Courthouse, 500 Pearl Street, New York, New York, at a date and time

to be set by the Court for an order precluding the government from offering at trial evidence that

the Deerfield defendants sought or received information unrelated to CMS and for such other

relief as this Court may deem just and proper.

Memorandum Endorsement                    United States v. Blaszczak, 17-cr-0357 (LAK)

Defendants Olan and Huber (the "Deerfield Defendants") move *in limine* to preclude evidence that they sought or received information unrelated to CMS. The motion addresses in general terms evidence relating to information sought or received from four private organizations. The only specific piece of evidence it identifies, however, is GX 711, an email to defendant Huber reporting that David Blaszczak "has a guy" who will be in "a closed-door meeting" of the AMA RUC, a body that is part of or related to the American Medical Association and that is said to have been asked by CMS to advise it with respective to possible cuts in payments for radiation oncology services. As this is the only exhibit specifically identified by the motion, the Court confines its analysis to it.

The government argues that defendants' efforts to seek this information is direct evidence of the alleged conspiracy to obtain material non-public information from CMS and to trade on that information. In the alternative, it contends that it is admissible under Rule 404(b) to prove knowledge, *modus operandi,* and lack of mistake.

The government's contention that the email is direct evidence of the charged conspiracy rests on the assertion that "in providing the defendants non-public information from AMA, Blaszczak was also providing the defendants with a glimpse into CMS's thinking on radiation oncology cuts and a timetable for these cuts." Gov't Mem. [DI 209] But that argument is unpersuasive.

As an initial matter, the Indictment does not allege, and government concedes that it does not contend, that Blaszczak illegally obtained information from AMA-RUC or the other non-CMS sources identified in defendants motion. Thus, it is far from self evident that obtaining non-public information from AMA-RUC was part of the charged conspiracy. Moreover, proof that Blaszczak "ha[d] a guy" in the AMA RUC meeting at most is evidence tending to establish that he would or was expected to have non-public AMA information concerning what AMA RUC was likely to recommend to CMS – in other words, information about one of perhaps many inputs to CMS that might or might ultimately be incorporated into "CMS's thinking," which is rather a different thing.

The government is on stronger ground under Rule 404(b), which provides that "[]evidence of a crime, wrong, or other act" is admissible, subject to Rule 403, for non-propensity purposes "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." It contends that GX 711 is relevant to "defendants' awareness of Blaszczak's techniques in obtaining edge from inside sources and on the relevance of these private organizations to the CMS decision process."

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401. The essence of the government's argument therefore must boil down to this. At least defendant Huber, who received the email, knew from GX 711 that the fact that the AMC-RUC meeting was to be held behind "closed doors" suggests that Blaszczak and other members of the

public were not permitted by AMC-RUC to know the substance of the meeting. The email informed him also that Blaszczak nonetheless had "a guy there," which implies that Blaszczak had someone who was expected to disclose the substance of the meeting to him and that he in turn would pass that information on to the Deerfield defendants. GX 711 therefore suggests that at least defendant Huber knew that Blaszczak was planning to obtain and pass on AMC-RUC information that, as far as AMC-RUC was concerned, neither Blaszczak nor Deerfield was supposed to have. This, the argument goes, tends to prove defendant Huber's knowledge that Blaszczak's methods included getting information from sources that intended to keep the information private and to Huber's willingness to receive and desire for such information.

The Deerfield defendants rejoin that "[t]he government should not be able to argue to the jury that because Blaszczak had access to someone who knew what happened at a 'closed door' meeting with the AMA, he must have had similar (allegedly illegal) interactions with respect to CMS." DI 211, at 2. But the government's 404(b) argument would not permit such use. Rather, the evidence, to the extent it is offered under Rule 404(b), is offered only for the more limited purposes outlined in the preceding paragraph.

The Court concludes that this evidence is relevant for the limited purpose stated and comes within Rule 404(b). The question remains whether it should be excluded under Rule 403 on the grounds that it could be misconstrued by the jury, would require the defendants to offer additional proof to explain the email. The Court is not persuaded.

This trial takes place against the backdrop that some investors avidly seek information that will give them an "edge" – facts or insights about an issuer of publicly traded securities that are not generally known to the investing public and that will give those who have them an informational advantage in trading those securities. Some of the means by which some investors acquire an "edge" are perfectly lawful. Some are not. At least some of the defendants' opening statements thus far indicate that they will contend that their actions all fall into the lawful category, which includes hard work, proper research, and careful analysis of information in the public domain. The government contends that the picture defendants seek to draw is inaccurate in that Blaszczak crossed the line and the Deerfield defendants knew it.

Two conclusions flow from this.

First, the jury, applying this Court's instructions, will have to classify the defendants' actions, as the jury finds them to be, as (1) lawful research or (2) unlawfully obtaining and trading on material inside information. They will have to do that over what is expected to be a great deal of evidence. They will have to do it regardless of whether GX 711 comes into evidence. GX 711 will not make that task more difficult or cause any additional confusion, if any there be in the first place. In any case, any such risk can be dealt with adequately by a limiting instruction.

Second, the evidence, as the Court views it, has material probative value. While the government does not contend that GX 711 is evidence of charged conduct or any criminal activity,

it does suggest a willingness on the part of Blaszczak to gain access to non-public information that he was not supposed to have and on the part of Huber to use that information. Of course, it will be up to the jury to decide upon its ultimate significance.

Accordingly, the probative value of GX 711 is not substantially outweighed by any unfair prejudice, risk of confusion, or other factor warranting its exclusion.

Defendants' motion [DI 202] is denied as to GX 711 and denied without prejudice to the other evidence described only generally in their memorandum. The Court will consider other exhibits and evidence when they are specifically identified to it, as the question of admissibility may be resolved differently depending upon the substance of the particular exhibits or testimony offered.

SO ORDERED.

Dated:          April 3, 2018

_____
Lewis A. Kaplan
United States District Judge

3