UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,

    -against-                S1 17-cr-357 (LAK)

DAVID BLASZCZAK, et al.,

       Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION
## ON MOTION RELATING TO SUBMISSION OF INDICTMENT TO JURY

LEWIS A. KAPLAN, *District Judge.*

    The indictment in this four defendant insider trading case contains eighteen counts.. It thus far has taken four weeks to try. The transcript exceeds 4,000 pages. Hundred, perhaps more than 1,000 exhibits are in evidence. Summations consumed about nine hours. The jury has been charged and will begin deliberations tomorrow morning. Defendants now move for an order foreclosing the submission of any part of the indictment to the jury. Alternatively, they that everything but "the portions of the indictment reciting the statutory allegations" be redacted from any part of the indictment sent into the jury room. Should that relief not be granted, they ask that certain enumerated paragraphs and the forfeiture allegation be removed. They argue, in substance, that (1) this is a "speaking" indictment, (2) it contains some allegations as to which no evidence was received, and (3) evidence that supports other allegations was received only as against particular defendants and/or for limited purposes. They argue that they would be prejudiced absent such relief because the indictment "contains a running narrative of the government's version of the facts of the case, including detailed allegations of facts not necessary for the jury to find in order to address the

2

elements of the charged offenses."[1]  They rely heavily also on this Court's decision in the *Fawwaz* case, in which it submitted only a heavily redacted copy of the indictment to the jury.[2]

*The Relevant Principle*

Notwithstanding the defendants' selective quotation from a footnote in *United States v. Esso,*[3] which is the Second Circuit's most recent encounter with the role of the indictment in jury deliberations, that case began by stating that this Circuit has

> "long recognized that trial courts may, in their discretion, 'permit[] the jury to take a copy of the indictment into the jury room, after taking care to instruct the jury that the indictment [is] not to be considered evidence.'  *United States v. Giampino,* 680 F.2d 898, 901 n. 3 (2d Cir. 1982); *see also United States v. Press,* 336 F.2d 1003, 1016-17 (2d Cir. 1964) (holding that it is not error to give the indictment to the jury for use during its deliberations,' but noting the 'particular importance" of giving proper limiting instructions regarding the indictment in such circumstances)."[4]

Indeed, *Esso* went considerably farther.  It held that the trial court in that case had not erred by allowing jurors to take the copies of the indictment provided for use in the jury room home with

---

[1] DI 273, at 3 (quoting *United States v. Esso,* 684 F.3d 347, 355 n.5 (2d Cir. 2012) (internal quotation marks omitted)).

[2] *United States v. Fawwaz,* No. S7 98-cr-1023 (LAK),, at *3 (S.D.N.Y. May 6, 2015).

[3] 347 F.3d at 355 n.5.

[4] *Id.* at 350.

them in view of the court's "clear and emphatic limiting instructions" (1) not to show the indictment to, (2) not to discuss it with others, (3) not to conduct independent research including on the internet, and (4) not "to consider the indictment evidence of the guilt of the accused. So the question of whether to send all or part of the indictment into the jury room is entirely within the discretion of this Court.

*Application*

   *Submission of the Indictment*

We note at the outset the complexity of the subject matter underlying this case, the length of the trial, the large volume of documentary evidence, and the often long and extremely detailed cross-examinations. While the core charge – Mr. Worral tipped Mr. Blaszczak to material non-public information of the Centers for Medicare and Medicaid Services ("CMS"), Mr. Blasczak then passed on the tips to Messrs. Huber and Olan and others of Deerfield Managment, and Deerfield then traded on that inside information – is simplicity itself, the case involves a large amount of detail and specialized information. Without attempting to be encyclopedic, the trial focused for weeks on such matters as (1) the medical procedures and services at issue in CMS's rule making and other activities, (2) the time lines describing the various changes in CMS policies concerning the manner and amounts for which it would reimburse providers for those procedures and services that are at the heart of this case, (3) who within CMS had access to the allegedly tipped information and when they had it, (4) whether the allegedly tipped information really was held in confidence by CMS, (5) the important and perhaps in some respects dispositive distinction between market rumors and opinion about what CMS was likely to do, on the one hand, and inside

confirmation of the fact of its intention, (6) whether, when and how Mr. Worrall tipped Blaszczak to material inside information, and (7) whether, when and how Mr. Blaszczak such tips on, and (7) what then happened at Deerfield and why.  This material is not easy to master, even with the assistance of the exceptionally able counsel who tried this case.

Of course, counsel assisted in that regard.  The summations consumed about nine hours.  Virtually no stone was left unturned -- at least once. But it bears mention also that the summations, good as they were, were very lopsided on the defense side by virtue of the presence of four defendants.  The defendants summed up for about seven hours compared with the two hours taken by the government.  So the jury has heard 3-1/2 times as much argument from the defendants as from the government.  And although the Court appreciates that the four defense summations reflected commendable efforts to avoid undue repetition, perfection in that respect probably would have been impossible and surely was not achieved.  The jury has heard a lot more of the defendants' views of the evidence than of the government's.

The bottom line, then, is this.  Given the nature of this case and this record – and notwithstanding the efforts of counsel (and of the Court's charge) – anything that would fairly and properly assist the jury in systematically and appropriately organizing their deliberations and properly determining the guilt or innocence of each defendant on each count in which he is charged should be done.  As a general proposition, the Court is persuaded that the indictment should be submitted with the appropriate instructions.

*Redactions*

    **1.**    The defendants' first alternative request is to redact from the copy of the

indictment sent into the jury room everything but the statutory allegations. In order to understand this proposal, a brief description of the indictment is helpful.

Count One begins with about nine pages describing the defendants and various entities that are mentioned below the CMS rule making process. It proceeds to a five page summary description of the alleged scheme to defraud followed by twenty-three pages that describe each of the CMS events in respect of which the scheme allegedly operated. It then, under the heading "Statutory Allegations" and in about three pages, alleges a conspiracy and its three claimed objectives and a series of overt acts, coming to rest on page 40. The other seventeen counts repeat and reallege virtually all of the allegations of Count One and contain little else save statutory allegations – conclusory allegations in the terms of statutory language – relevant to the various specific offenses charged in each count.

Given the structure of the indictment, defendants' application seeks to eviscerate its substance. The practical effect of redacting everything but the statutory allegations would be to eliminate all of the factual allegations that could assist the jury in evaluating part of the large volume of evidence in the context of the charges to which the government claims it applies. Doing so, particularly in the context of the disparity of the time devoted to summations by the government and the defense, would serve only to make the jury's task more difficult and, perhaps, lead to needless confusion. The Court rejects that alternative in all of the circumstances of this case.

**2.** The defendants' more modest proposal is to redact a number of particular allegations that, they contend, "are unsupported by the evidence adduced at trial, or discuss and/or quote from documents that were either not entered into evidence or were admitted only for a limited purpose that is at odds with what is stated in the indictment." DI 273, at 5. They go on to make the

6

overly broad assertion, unsupported by logic or authority, that "[p]utting these allegations . . . before the jury[] would be wholly improper."

This contention is readily answered. First, it presupposes that the jury would ignore the instructions that should be and, in this case, have been and again will be, given when the indictment is submitted to the jury. As the Second Circuit said in *Esso,* among other cases, "we presume that jurors remain true to their oath and conscientiously observe the instructions and admonitions of the court."[5] Second, acceptance of that broad contention would be to invite a collateral litigation, in the context of determining which allegations should be redacted, as to the sufficiency of the evidence to support each contested part of the indictment.

Nor does the fact that this Court redacted the indictment in *Fawwaz* support defendants' expansive argument. The indictment in that case "was 148 pages long and contained 308 counts."[6] The defendant was charged in only four. Almost all of the remaining part of the indictment was inflammatory and/or largely extraneous to the charges on trial. Accordingly, the Court accepted the parties' agreement that the indictment should be redacted. The Court instructed the jury that it would receive the indictment or part of it in the jury room, including the list of alleged overt acts. The Court therefore did not list the alleged overt acts in its instructions on the premise – accepted by all counsel – that the jury would have at least that much of the indictment in the jury room. After the case was submitted to the jury, the government and the defendant proved unable to agree on a redacted version of the indictment. Rather than resolve the dispute over the

---

[5] *Esso,* 684 F.3d at 352 (internal quotation marks and citations omitted).

[6] *Id.* at *1.

7

appropriate redactions, the Court 'brought the jury back into the courtroom and read the list of overt acts from the indictment. That situation has little or no bearing here.

Accordingly, the Court rejects defendants' contention that it would be "wholly improper," even with appropriate instructions, to allow the jury to have *any* part of *any* indictment that contains allegations that "are unsupported by the evidence adduced at trial, or discuss[es] and/or quote[s] from documents that were either not entered into evidence or were admitted only for a limited purpose that is at odds with what is stated in the indictment." That of course is not to say that no redaction ever is appropriate in seeking to ensure a fair trial. It is to say only that the redacting instrument normally should be a scalpel, not a butcher's cleaver.

Turning to the defendants' final alternative request, the government has consented to the redaction of paragraphs 32b and 43. The Court has considered each additional proposed limited redaction carefully. So much of paragraph 15 as begins with the word "Furthermore" and the forfeiture allegation will be redacted. The Court's instructions with respect to the submission of the indictment, already given once, will be repeated and will be expanded to remind the jury to adhere to the limiting instructions given during the trial and in the Court's instructions given April 27, 2018. Thus, the motion is granted to the extent indicated above and denied in all other respects.

The Clerk shall terminate DI 273.

SO ORDERED.

Dated: April 29, 2018

/s/   Lewis A. Kaplan
_____
Lewis A. Kaplan
United States District Judge